**BEELMAN TRUCK CO., Appellant,**

v.

**ELMER BUCHTA TRUCKING, INC.,** Foster Brothers Trucking, Inc., Gerig's Trucking & Leasing, Inc., Gibco Motor Express, Inc., Jack Gray Transport, Inc., H & H Bulk Transport, Inc., Haley Brothers Coal & Supply, Inc., Haul Transport of VA, Inc., Rose Brothers Trucking, Inc., Schwerman Trucking, Co., Appellees.

No. 49A02–9204–CV–170.

Court of Appeals of Indiana,
First District.

March 30, 1993.

Andrew K. Light, Lynn D. Lidke, Scopelitis, Garvin, Light & Hanson, Indianapolis, for appellant.

Robert B. Hebert, David R. Day, Johnson, Smith, Densborn, Wright & Heath, Joseph P. Murdock, Smith & Murdock, Robert W. Loser, II, Brett R. Fleitz, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellees.

BAKER, Judge.

Appellant-applicant Beelman Truck Co. (Beelman) challenges the Indiana Department of Revenue's (the Department's)[1] restrictions governing Beelman's motor common carrier operating authority in Indiana. Beelman raises two issues for our review:

I. Whether the Department's prohibition of Beelman's proposed use of trailer equipment leased from Citizens Gas & Coke Utility (Citizens Gas) was contrary to law.

II. Whether the Department's prohibition of Beelman's proposed transportation of coal under common carrier authority was contrary to law.

## FACTS

Beelman is a major midwestern hauler of commodities usually and ordinarily transported in dump or pneumatic trailers. Its general offices are in St. Libory, Illinois, and it has operating facilities in Illinois, Missouri, and Indianapolis, Indiana. Beelman provides intrastate motor carrier services in Illinois and Missouri, and interstate motor carrier services in the midwest.

On January 12, 1988, Beelman filed for a permit to operate motor vehicles as a contract carrier for Citizens Gas in Indiana. A public hearing was conducted, and on June 8, 1989, the Department issued a permit ("Citizens Gas Order") authorizing Beelman to haul coke from Indianapolis to various points in Indiana for Citizens Gas.

In granting Beelman authority to operate as a contract carrier for Citizens Gas, the Department was influenced by numerous factors, including: the fact that Citizens Gas was a municipal utility; Citizens Gas needed strictly-timed deliveries, serial deliveries, and deliveries outside of regular business hours; most of the coke traffic was preloaded into Citizens Gas trailers; and Citizens Gas required its equipment to be available 24 hours per day, 7 days per week. *Record* at 2703. The Department also noted that Citizens Gas was Beelman's only Indiana intrastate customer, and that Beelman's equipment used in conjunction with Citizens Gas trailers was dedicated to Citizens Gas's exclusive use in Indiana intrastate commerce. *Record* at 2708.

Just 48 days after receiving the Citizens Gas Order, however, Beelman applied for a certificate of public convenience and necessity authorizing it to provide for-hire, intrastate transportation services as a common carrier in Indiana. Beelman sought the common carrier authority so it could "backhaul"[2] after making a run for Citizens Gas. By serving other shippers and receivers, Beelman argued it would reduce the substantial empty trailer mileage it was incurring from one-way fronthaul transporting. The Department conducted nine full days of hearings, at which time numerous witnesses appeared both in support of, and in opposition to, Beelman's common carrier application. On August 2, 1991, the Department granted ("Granting Order") Beelman's application. The protestants[3] petitioned for reconsideration, and on

---

1. Historically, motor carrier authority proceedings were under the jurisdiction of the Public Service Commission (later renamed the Indiana Utility Regulatory Commission), pursuant to Indiana's Motor Carrier Act of 1935. IND. CODE 8–2–7 *et seq.* (repealed by 1988 Ind.Acts Pub.L. No. 72–1988, §§ 10, 17; 1989 Ind.Acts Pub.L. No. 99–1989, § 37). Effective July 1, 1988, motor carrier regulatory powers were transferred to the Department of Revenue, 1988 Ind.Acts Pub.L. No. 72–1988, § 12, and the applicable statutes were later recodified at IND.

CODE 8–2.1–18 *et seq.* 1989 Ind.Acts Pub.L. No. 99–1989, § 9.

2. This term describes the industry practice of using a trailer emptied at the original destination for a paid run on the return leg of a trip.

3. Numerous appellee-protestants now request this court to affirm the Department's restrictions.

March 27, 1992, the Department issued an order ("Reconsideration Order") modifying the common carrier authority it had granted Beelman. The modifications included, among others, a restriction prohibiting Beelman from using the Citizens Gas trailers it leased under contract authority in its common carrier operations, and from transporting coal as a common carrier. *Record* at 578.

Beelman now appeals the above restrictions.

## DISCUSSION AND DECISION

### *Standard of Review*

■ Indiana appellate courts contemplate an extremely narrow review when the sufficiency of an administrative agency decision is at issue, as it is here. Three questions are pertinent to such a review: (1) whether the agency's ruling contains specific findings of fact on all determinations material to the order; (2) whether substantial evidence in the record supports the findings of fact; and (3) whether the findings of fact reasonably support the ultimate conclusion reached. *Associated Truck Lines v. Public Service Commission* (1986), Ind.App., 492 N.E.2d 704, 710; *Habig Trucking and Excavating, Inc. v. Public Service Commission* (1984), Ind. App., 466 N.E.2d 484, 487; *Coastal Tank Lines, Inc. v. Propane Transport, Inc.* (1981), Ind.App., 416 N.E.2d 440, 441 n. 1. When reviewing the sufficiency of the evidence supporting the administrative agency's decision, this court will neither reweigh the evidence nor substitute our judgment for the agency's. *Associated Truck Lines, supra,* at 711. Our function is to examine the record to determine whether there is a reasonably sound basis of evidentiary support. *Graves Trucking v. Public Service Commission* (1986), Ind.App., 490 N.E.2d 365, 367.

In this case, Beelman does not challenge the specificity of the Department's findings. It argues the evidence does not support the findings, and the findings do not support the conclusions.

## I

### *Citizens Gas Equipment*

Beelman contends the Department's restriction prohibiting Beelman's proposed use of Citizens Gas trailers is contrary to law. Specifically, it contends the findings do not support the conclusions, and the evidence does not support the findings.

### (a) Beelman's Burden of Proof

When seeking common carrier authority, applicants must prove by a preponderance of the evidence "that public convenience and necessity requires the proposed operation, and that the proposed operation will not unreasonably impair the existing public service of any authorized common carrier ... then adequately serving the same territory." IND.CODE 8–2.1–18–10(b).

■ Public convenience and necessity are "concept[s] not susceptible to rigid or precise definition." *V.I.P. Limousine Service, Inc. v. Herider–Sinders, Inc.* (1976), 171 Ind.App. 109, 116, 355 N.E.2d 441, 445. Thus, minimum standards or burdens cannot be set in proving public convenience and necessity because the public's needs are measured by many variables, and no definition can be given that would always be the same under different sets of facts. *Id.* at 116, 355 N.E.2d at 445. "The public need must be considered in an economic and social sense." *Id.* at 116, 355 N.E.2d at 445.

When making its determination of whether to grant common carrier authority, the Department may also consider, among others, the following factors:

(1) The financial ability of the applicant to furnish adequate service.

(2) Whether existing transportation service is adequate.

(3) The effect upon existing transportation, and, particularly, whether the granting of the application will or may seriously impair such existing service.

(4) The volume of existing traffic over the route proposed by the applicant.

(5) The effect and burden upon the highways and the bridges thereon, and the use thereof by the public.

(6) Whether the operations will threaten the safety of the public or be detrimental to the public welfare.

IND.CODE 8–2.1–18–10(d).

### (b) Sufficiency of the Findings

Beelman asserts the Department's findings regarding public convenience and necessity·do not support the restriction prohibiting Beelman from using Citizens Gas trailers in common carrier service. Specifically, it argues the Reconsideration Order lacks any findings regarding how use of Citizens Gas trailers would affect public convenience and necessity, while the findings in the Granting Order revealed that Beelman's proposal "[was] in keeping with a finding of public convenience and necessity." *Record* at 378.

■ As a preliminary matter, we agree with Beelman's assertion that the Department entered findings in both the Granting Order and the Reconsideration Order. Furthermore, we agree some of the findings in the Reconsideration Order conflicted with those entered in the Granting Order. We note, however, the Department consistently began the conflicting provisions with the statement "upon further review." *Record* at 578. After identifying the new restrictions, the Department stated that "the final order of August 2, 1991, is sustained in all other respects and is incorporated herein by reference." *Record* at 578. Contrary to Beelman's assertions, therefore, we conclude the Granting Order is included by reference only to the extent that its provisions do not conflict with the provisions of the Reconsideration Order. When the provisions conflict, the Reconsideration Order provisions, being the Department's most recent findings, control.

We begin by addressing the Department's findings of fact entered in the Reconsideration Order regarding use of Citizen Gas trailers in common carriage. Those findings included, in relevant part:

[1] In the present application ... [Beelman's] proposed use of the Citizens Gas trailers in common carriage undermines the contract shipper's distinct needs.... It is reasonable to predict occasions when the Citizens Gas trailers would not be available around-the-clock for the heavy volume of contract shipper deliveries which must necessarily be preloaded, serial or strictly timed.

[2] As a common carrier ... [Beelman] would no longer be able to guarantee fulfilling the distinct needs of its contract shipper due to [its] obligation to serve the public on a nondiscriminatory basis....

[3] [Beelman's] current application, seeking the broad intrastate common authority which was lacking in the Department's [contract carrier] consideration, clearly conflicts with the dedicated equipment requirement upheld in [the Citizens Gas Order]....

[4] The Department found that [Beelman's] proposed contract carriage would have little effect on existing transportation because "a grant of the requested [contract] authority will not authorize Applicant to serve any Indiana intrastate shipper other than Applicant." (citation omitted) [Beelman's] present application, which seeks broad common intrastate authority to serve many Indiana intrastate shippers, contravenes the Department's rationale in granting the [Citizens Gas Order].

*Record* at 575–76.

As the above findings of fact reveal, the Department analyzed whether the grant of common carrier authority, including the use of Citizens Gas trailers, could be reconciled with Beelman's contract carrier authority. The Department found that it would be inconsistent to allow Beelman to use the Citizens Gas trailers in common carriage when those trailers were dedicated to Citizens Gas's exclusive and continuing use and control. Without reweighing the evidence, we must now determine whether the findings support the Department's restrictions on the use of Citizens Gas trailers, and whether substantial evidence supports the findings. *See Associated Truck Lines, supra,* at 710.

■ First, Beelman complains the Department should not have considered Beelman's obligations to Citizens Gas when it

determined whether public convenience and necessity required the grant of common authority. Beelman asserts "the effect [that its] common carrier service proposal has upon the contract carrier services authorized in the Citizens Gas Order is neither material nor relevant to the issues in this case." *Appellant's Brief* at 26. We disagree. Indeed, the public transportation statutes mandate consideration of the effect that one grant of authority would have on the other.

IND.CODE 8–2.1–18–23 provides:

A person may not at the same time hold under this chapter a certificate as a common carrier and a permit as a contract carrier authorizing operation for the transportation of property by motor vehicle over the same route or within the same territory, unless for good cause shown the department finds that such certificate and permit may be held consistently with the public interest, and with the policy declared in section 5 of this chapter.

The general assembly's declared policies enunciated in IND.CODE 8–2.1–18–5 include, in relevant part:

(1) to provide for fair and impartial regulation of all modes of transportation subject to the provisions of the Indiana laws administered to recognize and preserve the inherent advantages of each;

(2) to promote safe, adequate, economical, and efficient service and foster sound economic condition in transportation and among the several carriers[.]

As the above statutory provisions mandate, contract and common carrier operations encompassing the same territory do not exist in a vacuum. It was proper, therefore, for the Department to consider the impact that common carrier authority would have upon Beelman's contract carrier authority when determining whether to grant Beelman the common authority it sought.

■ The Department found the two carrier services were incompatible: equipment could not be both dedicated to Citizens Gas and available for public carriage on a nondiscriminatory basis. Furthermore, we note that because Citizens Gas is a municipal utility and instrumentality of Indianapolis, *see Richardson v. Citizens Gas & Coke Utility* (1981), Ind.App., 422 N.E.2d 704, 704, Beelman's obligations to Citizens Gas are tantamount to obligations to the general public. Without question, it is reasonable to conclude Beelman's inability to meet its obligations to Citizens Gas under its contract authority would be contrary to public convenience and necessity. The Department's findings support the restriction prohibiting Beelman's use of Citizens Gas trailers in common carriage.

Not only did the Department find that a grant of common carrier authority would be inconsistent with Beelman's contract carrier duties, it also found the grant would completely contravene the Department's rationale for granting Beelman contract carrier authority in the first place. The Department originally granted Beelman's request for contract carrier authority because the Department found the grant would have little effect on existing transportation due to Beelman serving only Citizens Gas. The effect on existing transportation changes dramatically, however, with the introduction of Beelman's participation in common carrier hauling with Citizens Gas trailers.[4] The Department's findings are sufficient to support denying Beelman

---

**4.** Although the Department did not explicitly make such a finding, it is clear Beelman sought common carrier authority so it could make greater use of the equipment it leased from Citizens Gas. Under common carrier authority, Beelman could subsidize its contract carrier operations with additional revenues by backhauling dry bulk commodities for the public-at-large. The grant of such authority would give Beelman a considerable competitive advantage over existing carriers. The record reveals the contract between Citizens Gas and Beelman did not require Beelman to make further rental payments to Citizens Gas for backhauling. Beelman's rental fee was the same—12% of the fronthaul—whether Beelman used the equipment solely to serve Citizens Gas or to serve other shippers in common carriage, as well. To permit Beelman to use $3,000,000 worth of equipment owned by a municipal utility without additional charge while in competition with other common carriers would be devastating to all such competing carriers.

authority to use Citizens Gas trailers in common carriage.

### (c) Sufficiency of the Evidence

■ Beelman also argues the evidence is insufficient to support the Department's findings. We disagree.

Beelman concedes that the needs of Citizens Gas have not changed since Beelman first applied for the contract carrier authority, except that there may have been an increase in volume. Beelman also concedes that "Citizens Gas still requires strictly-timed deliveries, serial deliveries, and deliveries outside of regular business hours, as well as available equipment 24 hours a day, 7 days a week." *Appellant's Brief* at 30. Furthermore, the evidence reveals Citizens Gas continues to insist that its needs come first because it must have the equipment available to load coke for its customers.

Although Beelman offered evidence that it could satisfy Citizens Gas's needs and also use Citizens Gas trailers in common carriage, the Department chose not to credit such inconsistent testimony. Mindful of our limited standard of review which prohibits us from reweighing the evidence or substituting our judgment for the Department's, *see Associated Truck Lines, supra,* at 711, we conclude the evidence sufficiently supports the Department's findings.

## II

### Coal Restrictions

Next, Beelman challenges the Department's restriction prohibiting it from transporting coal under the grant of common authority.

The Department entered the following findings supporting its restriction:

[1] Upon further review of the evidence, [Beelman] has not proven that public convenience and necessity requires the statewide grant of coal hauling authority. All of the coal shippers testified, without exception, that the existing transportation service is adequate. The essence of the coal shippers' support of [Beelman's] common carrier application is lower freight rates....

[2] The hearing produced substantial testimony concerning future coal production levels. Upon further review, this testimony was conflicting and inconclusive. Various studies of coal production were identified and examined. Publications from the Energy Information Administration reported coal production increases from 1988 to the first quarter of 1990. On the other hand, publications from the Indiana Coal Council, Inc., and the Indiana Department of Environmental Management reported recent declines in Indiana coal production and anticipated continued drops in production. In total, evidence of increased coal production is inconclusive, and Applicant has not proven by a preponderance that public convenience and necessity requires additional coal haulers. Indeed, evidence of declining coal production suggests that an additional grant of coal-hauling authority would seriously impair existing certificated coal service. This adverse effect would be contrary to the public policy considerations underlying Indiana's motor carrier regulation. See IC 8–2.1–18–5 and –10.

*Record* at 577–78.

### (a) Sufficiency of the Findings

Beelman challenges the sufficiency of the findings supporting the coal shipping restriction. Beelman's argument has four restated components.

First, Beelman argues it was not required to prove existing coal transportation was inadequate in order to prove public convenience and necessity required the grant of common carrier authority to ship coal. Beelman cites *Nashua Motor Express, Inc. v. United State* (D.N.H.1964), 230 F.Supp. 646, for the proposition that "the absence of a finding of inadequacy is not alone sufficient to bar the issuance of a certificate...." *Id.* at 653. *Nashua Motor* is not instructive here, however, because the Department did not base its denial of Beelman's application solely on the finding that existing service was adequate.

■ Beelman argues next that the Department improperly failed to consider in-

creased rate competition when determining whether public convenience and necessity required granting Beelman's petition to ship coal under common carrier authority. We disagree with Beelman's assertions both that the Department was required to consider increased rate competition, and that it failed to consider such competition.

In *Associated Truck Lines, supra,* this court concluded the Public Service Commission properly considered a variety of factors, including the need for competitive shipping rates, when it awarded Central Transport, Inc. common intrastate shipping authority. Looking to federal case law, we concluded that considering rate competition was "not improper." *Id.* at 714. We did not, however, conclude that consideration of rate competition was mandated. Even if we were to reach such a conclusion, in this case, the evidence suggests the Department did analyze how the grant of authority would affect existing competitive rates. Under Finding No. 2, the Department stated that in light of evidence of declining coal production, the grant of common authority would impair existing coal shipping services. A reasonable interpretation of this finding is that the grant of common authority would impair both rates and competition. There was no error.

■ Third, Beelman argues the Department improperly isolated coal from the grant of authority to ship bulk commodities. Relying on *Graves Trucking, supra,* Beelman asserts that under the "representative showing of public need standard," once Beelman made a representative showing of public need and necessity for the shipment of generic bulk commodities, the Department was required to adopt a broad description of bulk commodities. *See Id.* at 371. Excluding coal shipping authority, argues Beelman, violated the federal policy favoring the grant of broad authority. *Appellant's Brief* at 43. *See Id.* at 371.

We are unpersuaded by Beelman's argument. In this case, the Department found that public convenience and necessity would not be served by granting Beelman common carrier authority to ship coal intrastate. In fact, the Department found that existing service would be harmed by such a grant. We do not interpret *Graves Trucking* to require the grant of broad authority when the administrative agency has determined broad authority would be contrary to public convenience and necessity.

■ Finally, Beelman argues the mere "suggestion" of serious impairment did not warrant the denial of coal-hauling authority. We disagree with Beelman's assertion the Department's findings were mere suggestions. The Department stated that Beelman failed to show by a preponderance of the evidence that public convenience and necessity required the grant of coal-hauling authority. *Record* at 578. *See* IND.CODE 8–2.1–18–10(b). The Department also found evidence that coal production was declining, which, logically, would impair existing competition. We are satisfied the findings were sufficient to support the restriction prohibiting Beelman from transporting coal in common carriage.

### (b) Sufficiency of the Evidence

■ Beelman also challenges the sufficiency of the evidence supporting the finding we have labeled No. 1 above regarding both public convenience and necessity, and the adequacy of existing coal transportation. To refute the Department's finding, Beelman cites testimony from coal shippers PSI and Peabody in which their representatives described past equipment shortages. Beelman argues the Department either "overlooked or ignored" the shippers' evidence, which Beelman alleges supported finding the need for more shippers. *Appellant's Brief* at 39. Beelman now asks this court to consider the shippers' evidence for the first time. We decline the invitation to draw a distinction in our review between weighing evidence for the first time and impermissibly reweighing the evidence. The Department heard nine days of testimony before entering its findings. Provided the Department's findings are supported by sufficient evidence, it is of no moment that the evidence might also have supported different findings.

Here, the record reveals the PSI representative testified that PSI's coal shipping needs were being met, and he had no reason to believe coal supplies would become insufficient should Beelman's application for common carrier authority to ship coal be denied. Similarly, the Peabody representative also testified that coal shipment was adequate. In light of this evidence, there was a sufficient evidentiary basis supporting the Department's finding that public convenience and necessity did not require issuing Beelman common carrier authority to ship coal.

## CONCLUSION

The Department's findings of fact reasonably support its restrictions prohibiting Beelman's use of Citizen Gas trailers in common carriage, and prohibiting Beelman's shipment of coal in common carriage. Furthermore, substantial evidence in the record supports the Department's findings.

The Department's judgment is in all things affirmed.

FRIEDLANDER and MILLER, JJ., concur.