**Jimmie CARTER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 27A02–9610–CR–662.**

Court of Appeals of Indiana.

Sept. 30, 1997.

Transfer Granted Dec. 12, 1997.

---

Robert J. Bratch, Jerry T. Drook, Marion, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, John B. Herriman, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

KIRSCH, Judge.

Jimmie Carter appeals his probation revocation. He presents several issues, one of which is dispositive:

> Whether the State presented a sufficient evidentiary foundation to admit a laboratory technician's testimony concerning urinalysis results.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Carter pled guilty to operating while intoxicated,[1] a Class D felony. The trial court placed him on probation for one and one-half years. As a condition of probation, the court prohibited Carter from using illegal drugs and required him to provide urine samples

---

1. See IC 9–30–5–1, –3.

for drug testing. In the first six months of his probation, two of Carter's urine samples tested positive for marijuana use. The State filed a revocation petition, alleging that Carter had violated the terms of his probation by using marijuana.

At the revocation hearing, the State offered testimony from the laboratory technician who had processed Carter's urine tests. Carter's counsel objected to the testimony, claiming that the technician was not qualified to give expert testimony concerning the test results. The trial court overruled the objection. After hearing the testimony, the trial court found that Carter had violated his probation by testing positive for marijuana.[2] *Record* at 5.

### DISCUSSION AND DECISION

We review the trial court's evidentiary ruling on the lab technician's testimony for abuse of discretion. *Daum v. State*, 625 N.E.2d 1296, 1297 (Ind.Ct.App.1993). We base our review on case law rather than the Indiana Rules of Evidence because the Rules do not apply to probation revocation hearings. Ind.Evidence Rule 101(c)(2)

Carter cites *Corbin v. State*, 563 N.E.2d 86 (Ind.1990), and argues that the State failed to provide the evidentiary foundation necessary to qualify the lab technician as an expert. In *Corbin*, our supreme court identified a two-part foundation for expert testimony: (1) the testimony must concern a field beyond the knowledge of lay persons, and (2) the expert must have "sufficient skill, knowledge or expertise" in the field to aid the trier of fact. 563 N.E.2d at 92–93. Based on *Corbin*, Carter maintains that the State's foundation was insufficient because the State failed to show that the technician had sufficient knowledge or expertise to testify about the urinalysis results.

Carter also argues that the foundation for urinalysis results must include testimony about the urinalysis equipment. As Carter's counsel explained to the trial court and at oral argument to this court, the State presented no evidence concerning the accuracy of the equipment, the scientific basis for the testing process, or the scientific community's level of acceptance of the equipment.

In response, the State cites *Clark v. State*, 580 N.E.2d 708 (Ind.Ct.App.1991), which presented an evidentiary issue similar to that presented here. In *Clark*, as in this case, the trial court revoked the defendant's probation based on urinalysis results. Like the trial court here, the *Clark* trial court admitted expert testimony from the technician that performed the urinalysis. On appeal, the defendant contended that the technician was not qualified to testify concerning the urinalysis. This court rejected the defendant's contention, finding that the defendant had waived any evidentiary error by failing to object to the testimony. 580 N.E.2d at 712. We went on to explain that even if the defendant had preserved the error, we would affirm the trial court's decision to admit the technician's testimony. We said "[N]o precise quantum of knowledge is required if the witness shows a sufficient acquaintance with the subject." *Id.*

The dispute in this case requires us to reemphasize the requirements outlined in *Clark* and to explain the requisite evidentiary foundation for urinalysis results in probation revocation hearings. The foundation has two parts. The State must establish: (1) the technician performing the test understands the urinalysis procedure; and (2) the equipment used to perform the test is generally accepted in the urinalysis field. To fulfill the requirement for the first part, the State must demonstrate either that the technician has a basic understanding of the scientific principles upon which urinalysis is based and can apply those principles to perform urinalysis or that the technician has been trained or certified by an organization generally recognized in the field as having sufficient expertise to provide such training or certification. *Clark*, 580 N.E.2d at 712; *see also Hopkins v. State*, 579 N.E.2d 1297, 1303 (Ind.1991) (foundation for expert testimony varies according to the level of expertise necessary to

---

**2.** The trial court also found that Carter violated his probation by failing to pay user fees. The Record is unclear as to whether the trial court deemed failure to pay user fees an alternate ground for revoking Carter's probation, and the State does not address this issue.

perform the test at issue); *accord Markley v. State*, 603 N.E.2d 891, 894 (Ind.Ct.App.1992) (test performed by generalist requires adherence to strict foundational requirements), *trans. denied*.

■ The second part requires that the State present some evidence that the equipment is accepted as reliable among urinalysis practitioners. When a probationer challenges the scientific reliability of urinalysis equipment, the State must demonstrate that the equipment is "sufficiently established to have gained general acceptance in the particular field in which it belongs." *Penrod v. State*, 611 N.E.2d 653, 654 (Ind.Ct.App.1993) (quoting *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923)), *trans. denied*.[3] In *Penrod*, we took judicial notice that the equipment at issue, an ADX Abbott system, had reached a sufficient level of acceptance.[4]

■ Here, in contrast, the State provided no information concerning the reliability of the equipment used or the manufacturer of the equipment. Indeed, the name of the equipment and the manufacture is unclear from the Record. The Record refers to the equipment as a "CIVA" machine; other sources refer to a phonetically similar machine as "Seva" and "Syva." *Record* at 61 (CIVA); *Penrod*, 611 N.E.2d at 654 ("Seva"); Wayne Anderson, *Judicial Notice in Urinalysis Cases*, 1988–Sept. Army Law. 19, 29 ("Syva"). Based on the finding in *Penrod*, we or the trial court could possibly take judicial notice of the reliability of the ADX Abbott machine, but the State provided no

timely information upon which a court could take judicial notice of the reliability or level of acceptance of the CIVA equipment used in this case.[5] There was no evidence of the model number or serial number of the equipment, of the date of manufacture, or of the general acceptance of the machine here at issue.

■ In addition to the lack of foundation on the urinalysis equipment itself, the State failed to prove the necessary qualifications of the technician performing the test. The technician could not explain the scientific basis of the testing procedure, nor had he received any certification to perform the procedure. His training was limited to completion of the manufacturer's training course. Absent any information concerning the manufacturer or the course, or some indication of the technician's understanding of the scientific basis for the test, the Record lacks the requisite foundation to admit the technician's testimony concerning the test results. Unlike the technician in *Penrod*, no evidence was introduced that the technician understood the appropriate protocols and procedures. *Compare Penrod*, 611 N.E.2d at 655 n. 1. (understanding of protocol); *Clark*, 580 N.E.2d at 712 (certification).

For the reasons discussed above, we hold that the State failed to provide a sufficient foundation for the qualifications of the technician and for the reliability of the urinalysis equipment at issue in this case.

Reversed.

3. Our supreme court has determined that Rules 403 and 702 of the Indiana Rules of Evidence supersede the *Frye* common-law rule. *Newhart v. State*, 669 N.E.2d 953, 955 (Ind.1996). As noted above, however, the Rules of Evidence do not apply to probation revocation hearings. Accordingly, the *Penrod* court's reliance on *Frye* is still valid for probation matters. We express no opinion as to whether our holding would be different in a case controlled by the Indiana Rules of Evidence.

4. In *Penrod*, we noted that the Record contained a statement that "there is no difference between [the] Abbott Laboratory machine ... or the Seva Corporation." 611 N.E.2d at 654. This reference is insufficient to allow judicial notice concerning the machine at issue in this case. The *Penrod* decision indicates that this statement was

made by the probationer or his counsel; thus, while it was a sufficient basis for our decision in *Penrod*, it does not form a sufficient basis for acceptance of such evidence in other cases. Further, the *Penrod* court limited its holding to the Abbott machine. Thus, the *Penrod* recognition of urinalysis machines is distinguishable from the machine at issue in this case.

5. Shortly before the oral argument in this case, the State submitted a list of supplemental authority. Although some of the cases or articles in the list contain some reference to "Syva" machines, the references are more than ten years old and do not establish the reliability of the machine here at issue. We decline to take judicial notice of potentially outdated references that were neither presented to the trial court nor explained in the State's brief.

STATON, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the majority's conclusion that the State laid an inadequate foundation for introduction of the urinalysis evidence. The majority concludes that the State did not establish that the operator of the machine qualified as an expert and the State failed to establish the scientific reliability of the urinalysis equipment itself. I disagree on both counts.

The majority cites from *Clark v. State,* 580 N.E.2d 708 (Ind.1991), the appropriate standard for reviewing whether a witness is qualified to testify. No quantum of knowledge is necessary to qualify the witness. Therefore, it is not surprising that our review is deferential, calling for reversal only in cases of abuse of discretion. *Id.*

In the instant case, Pulley, the operator of the CIVA machine, testified that he had attended CIVA schooling for four weeks, and completed all the training necessary to become an operator of the CIVA urinalysis machine. He testified that he had been employed as a lab technician for five-and-one-half years, during which time he had tested more than 10,000 samples. During that period, he has been called upon to testify in court "roughly a hundred times." *Record* at 62. Nevertheless, the majority rejects Pulley's qualification as an expert because he "could not explain the scientific basis for the test." Op. at 1115. I presume the majority's conclusion in this regard is based upon Pulley's testimony that he was unfamiliar with the internal functioning of the urinalysis machine. I do not agree that such knowledge was necessary to qualify Pulley as an expert.

As an operator of the machine, as opposed to, for instance, its designer, Pulley was not disqualified as an expert merely because he did not know the mechanical specifics of how the machine performed its task. As the operator, to be qualified as an expert it was enough that he possessed expertise in the *use* of the machine. The CIVA machine measured the presence of certain chemicals in the urine, including some indicating the presence of marijuana. Pulley evinced detailed knowledge with respect to what the CIVA machine was designed to test, how the machine was operated, and how the results of such tests were interpreted.

Comparing Pulley's credentials with those found acceptable in *Clark v. State,* 580 N.E.2d 708 (Ind.Ct.App.1991), and *Fox v. State,* 506 N.E.2d 1090 (Ind.1987), I conclude that the qualification of Pulley as an expert was not erroneous. In *Clark,* the witness stated only that he had received training to be a lab technician, named the person who had trained him, and identified the nature of his certification. In *Fox,* the proposed expert testified that he had attended training for one to two weeks, that the training was supervised by someone experienced in the field, but that he had never testified at a trial as an expert on the subject.

Pulley provided more detailed testimony about his training than was provided in either *Clark* or *Fox.* Pulley's training appears to have been at least as rigorous as was the case in *Clark* and *Fox.* Moreover, Pulley's experience as an operator was extensive and his experience as an expert witness far exceeded that of the expert in *Fox.* Therefore, consistent with the standard applied in both *Clark* and *Fox,* I believe that Pulley qualified as an expert in the areas for which his expert testimony was offered, *i.e.,* the operation of the CIVA machine and the interpretation of CIVA machine test results.

I also disagree with the majority's conclusion that there was an insufficient foundation laid for the urinalysis equipment itself. As the majority notes, the record identifies the equipment in question as a "CIVA" machine. However, there are also references made to "Seva" and "Syva" machines. Because of the phonetic similarity and the context in which the references appear in the record, it is clear to me that "Seva", "Syva", and "CIVA" all refer to the same machine. Our court has already recognized the CIVA machine's reliability for purposes of laying a foundation for accepting scientific and expert testimony:

Neither do we have any difficulty in ruling that the ADX Abbott system has reached a similar level of acceptance because, accord-

ing to *Penrod,* "there is no difference between [the] Abbott Laboratories machine and the EMIT Cobus or the Seva Corporation.... Those are basically the same technologies. Although the names may be a little different they are basically the same." ... Based upon this statement, the trial court did not err in admitting the test results over Penrod's objection that an inadequate foundation had been laid for the scientific reliability of the ADX Abbott machine.

*Penrod v. State,* 611 N.E.2d 653, 654 (Ind.Ct. App.1993).

It is beyond debate that urinalysis has achieved a sufficient level of scientific reliability to be accepted into evidence by our courts. In my view, the above excerpt from *Penrod* reflects a recognition of the reliability not only of urinalysis machines made by ADX Abbott, but also of those manufactured by EMIT Cobus and Seva, or CIVA.

I would affirm the judgment.