[Cite as *State v. Howard*, 2013-Ohio-2343.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

CHRISTOPHER T. HOWARD

      Defendant-Appellant

Appellate Case No. 2012-CA-39

Trial Court Case No.  2011-CR-478

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 7th day of June, 2013.

. . . . . . . . . . .

ELIZABETH ELLIS, Atty. Reg. No. 0074332, Greene County Prosecuting Attorney, 55 Greene St., Xenia, OH 45385
      Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 N. Detroit St., Suite 102, Xenia, OH 45385
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

    **{¶ 1}** Defendant-Appellant, Christopher T. Howard, appeals from his criminal

conviction and sentence on four counts of Trafficking in Cocaine, two counts of Possession, and one count of Having Weapons While Under Disability. Howard's conviction also included eight forfeiture specifications.

{¶ 2} Howard contends that the trial court abused its discretion in rejecting his plea agreement with the Appellee, the State of Ohio, because it failed to state its reasons for the rejection on the record. Additionally, Howard argues that the trial court erred in overruling his motion to suppress evidence on grounds that police officers exceeded the scope of a search warrant. Howard also contends that the trial court abused its discretion in overruling his motion for relief from joinder, claiming that joinder of his offenses was unduly prejudicial. Howard further argues that the trial court abused its discretion in overruling his motion for a trial continuance. Finally, Howard contends that the cumulative nature of the trial court's alleged errors denied him the right to a fair trial and due process.

{¶ 3} We conclude that the trial court did not abuse its discretion in rejecting Howard's plea agreement. The trial court stated its reasons for the rejection on the record during Howard's sentencing hearing, and the trial court's reasoning was sound.

{¶ 4} We next conclude that the trial court did not err in overruling Howard's motion to suppress evidence that was obtained by a search warrant. The language in the search warrant specifically authorized police officers to search the area in which the evidence was found. Therefore, the search did not exceed the scope of the warrant.

{¶ 5} We also conclude that the trial court did not abuse its discretion in overruling Howard's motion for relief from joinder. Howard's offenses were properly joined pursuant to Crim.R. 8(A) and R.C. 2901.12(H), and Howard failed to demonstrate that he was unduly prejudiced as a result of the joinder.

{¶ 6}    As a further matter, the trial court did not abuse its discretion in overruling Howard's motion for a trial continuance.  Howard's reasons for requesting a continuance were insufficient to warrant a continuance and defense counsel's actions partially contributed to the need for a continuance.

{¶ 7}    Finally, upon finding that the trial court committed no error, we conclude that there was no cumulative error which denied Howard's right to a fair trial and due process. Accordingly, the judgment of the trial court will be Affirmed.

## I.    Facts and Course of Proceedings

{¶ 8}    This case arises from an operation of the Greene County Agencies for Combined Enforcement Task Force (A.C.E.).  A.C.E. is a group of officers from individual police agencies within Greene County who investigate drug trafficking.  A.C.E. learned through a confidential informant that the Appellant, Christopher T. Howard, was trafficking cocaine.  On various occasions, A.C.E. instructed the confidential informant to call Howard in an attempt to purchase cocaine.

{¶ 9}    On January 6, 2011, the confidential informant set up a meeting with Howard at the K-Mart parking lot on Indian Ripple Road in the city of Beavercreek, Greene County, Ohio. At the meeting, the confidential informant was wired, and he purchased 13.15 grams of cocaine from Howard.

{¶ 10}    On January 27, 2011, the confidential informant set up another meeting with Howard at Cruxten Drive in the city of Huber Heights, Montgomery County, Ohio.  At the meeting, the confidential informant was wired and he purchased 11.94 grams of cocaine from Howard.

{¶ 11}    On March 18, 2011 and March 23, 2011, the confidential informant called Howard in an attempt to buy one-half ounce (14.25 grams) of cocaine.   The telephone calls were recorded, and the recordings captured Howard and the confidential informant discussing the purchase price of cocaine.   No meeting or sale resulted from these communications.

{¶ 12}    Howard drove a white Cadillac Escalade to each meeting with the confidential informant.   The Escalade was registered in the name of Howard's mother, Doris Howard. Howard's mother resided at 6135 Sandbury Drive, Huber Heights, Ohio.   Howard's mother testified that Howard does not live with her, but that he is always welcome in her home. Howard receives his mail at his mother's residence, and his son, and the mother of his son, both live at the residence as well.

{¶ 13}    On March 24, 2011, Detective Richard Miller of A.C.E. obtained a search warrant stating that he had probable cause to believe that there was cocaine and other illegal property concealed at 6135 Sandbury Drive.   Specifically, the warrant authorized a search:

      a.      upon the person(s) of:

            1.      Any person found at said residence [6135 Sandbury Dr, Huber Heights, Ohio]

      b.      within the listed vehicles:

            1.      1999 Cadillac Escalade white in color Oh reg FBJ4141, VIN 1GYEK13R7XR413582

      c.      and / or at the following place(s):

      The dwelling at 6135 Sandbury Dr, Huber Heights, Montgomery County Ohio is a ranch style single family home. * * * At the rear of the residence there is a two car detached garage that has white

vinyl siding, dark colored shingled roof, and white garage door. Surrounding curtilage. * * * Exhibit A attached to Defendant's Motion to Suppress Evidence (Oct. 5, 2011).

**{¶ 14}** On March 29, 2011, the search warrant was executed by A.C.E. officers at the residence of 6135 Sandbury Drive. During the search, the officers discovered 269.63 grams of cocaine in the trunk of a white Chrysler Sebring. The Sebring was located in the residence's two-car detached garage. The officers also found various firearms inside the residence. At the time, Howard was under a weapons disability due to a prior felony offense for possession of drugs.

**{¶ 15}** As a result of A.C.E.'s investigation and search, Howard was indicted in Greene County for three counts of Trafficking in Cocaine in an amount equal to or exceeding ten grams, but less than 20 grams, one count of Trafficking in Cocaine in the vicinity of a school in an amount equal to or exceeding 100 grams, but less than 500 grams, two counts of Possession of Cocaine in an amount equal to or exceeding five grams, but less than 25 grams, and one count of Having Weapons While Under Disability. His indictment also included a firearm specification and eight forfeiture specifications. The firearm specification and the specification for trafficking in the vicinity of a school were later dismissed.

**{¶ 16}** On October 5, 2011, Howard filed a motion to suppress the evidence obtained pursuant to the search warrant. The trial court overruled the motion on April 20, 2012. On February 29, 2012, Howard filed a motion for relief from prejudicial joinder of offenses. The trial court overruled the motion on April 20, 2012.

**{¶ 17}** Prior to trial, Howard and the State negotiated a plea bargain in which Howard agreed to plead guilty to all counts in exchange for serving a stipulated six-year prison term. A

few days before trial, both counsel advised the trial court of the plea bargain, but the trial court refused to accept it.

{¶ 18}   On the day of trial, April 23, 2012, Howard filed a motion for a trial continuance, which the trial court overruled.   The trial court also mentioned the plea bargain, and confirmed on the record that it was rejected.   Counsel for the State requested the trial court to state its reasons for the rejection, but the court failed to give its reasons at that time.   Trial went forward, and the jury found Howard guilty on all charges.   At Howard's sentencing hearing on May 17, 2012, the trial court stated its reasons for rejecting the plea agreement on the record, and sentenced Howard to 11 years in prison.   Howard subsequently filed an appeal.

## II.   Did the Trial Court Err When it Rejected the Plea Agreement?

{¶ 19}   Howard's First Assignment of Error states that:

The Trial Court Erred in Rejecting a Valid Plea Agreement.

{¶ 20}   Under this assignment of error, Howard argues that the trial court abused its discretion when it rejected the parties' plea agreement on grounds that it failed to give a reason for the rejection on the record.   The State concedes error in this regard, and claims that the record is insufficient to support the rejection.   Based on the record, we disagree.

{¶ 21}   It is well settled that "[t]he decision to accept or reject a plea bargain rests solely within the discretion of the trial court."   (Citation omitted.) *State v. Arde*, 190 Ohio App.3d 196, 2010-Ohio-5274, 941 N.E.2d 119, ¶ 18 (2d Dist.).   An appellate court generally "reviews a trial court's rejection of a plea agreement under an abuse of discretion standard."   (Citation omitted.) *State v. Keyes*, 4th Dist. Meigs No. 05CA16, 2006-Ohio-5032, ¶ 8. Abuse of discretion is "an attitude that is unreasonable, arbitrary or unconscionable."   (Citation omitted.)   *AAAA*

*Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 22} With respect to plea agreements, the trial court "must exercise its discretion based on the facts and circumstances before it * * *." (Citation omitted.) *State v. Carter*, 124 Ohio App.3d 423, 428, 706 N.E.2d 409 (2d Dist. 1997); *Accord State v. Raymond*, 10th Dist. Franklin No. 05AP-1043, 2006-Ohio-3259, ¶ 15; *State v. Graves*, 10th Dist. Franklin No. 98AP-272, 1998 WL 808356, *4 (Nov. 19, 1998). "When a recommended plea bargain is rejected, the court ought to state reasons for his rejection * * * " unless "the facts themselves speak so eloquently that no statement by the judge is required." *City of Akron v. Ragsdale,* 61 Ohio App.2d 107, 109, 399 N.E.2d 119 (9th Dist. 1978); *Accord State v. Ligon*, 12th Dist. Clermont No. CA 2009-09-056, 2010-Ohio-2054, ¶ 8; *State v. Brown*, 7th Dist. Mahoning No. 08 MA 13, 2009-Ohio-1172, ¶ 17; *State v. Newland*, 4th Dist. Ross No. 02CA2666, 2003-Ohio-3230, ¶ 23. It is good public policy for the trial court to state its reasons for rejecting a plea agreement. *State v. Russell*, 4th Dist. Highland No. 634, 1987 WL 16081, *2 (Aug. 27, 1987).

{¶ 23} Prior to the trial in this case, the State requested that the trial court provide its reasons for rejecting the plea agreement on the record. While the trial court did not initially comply with the State's request, it did eventually state its reasons during Howard's sentencing hearing. The trial court stated:

> You may have gathered from the fact that the Court refused this original
> plea bargain that I felt that six years was not an adequate sentence for someone
> who has alleged to have committed the offenses that [Howard] did, and now a jury

has spoken and said you did, indeed commit those offenses.

The Court, probably more than any other feature, notices the fact that for most of your adult life you have been convicted of these same type of offenses, possession or trafficking in drugs, both in the State and the Federal System, and a substantial portion of your adult life – I'll call it a substantial portion, you have been in prison for these offenses.  Transcript Vol. III, p. 589, ln. 20-25, p. 590, ln. 1-7.

**{¶ 24}**    The record indicates that the trial court rejected the plea agreement based on the nature of Howard's offenses, the fact that Howard had a history of committing the same types of offenses, and that he had already been to prison for his past offenses.  The trial court's reasoning is sound and is not unreasonable.  While it would have been prudent for the trial court to have immediately responded when asked to set forth its reasoning for the rejection, we find no error resulted given the fact that the trial court eventually provided its reasoning on the record, and such reasoning was not an abuse of discretion.

**{¶ 25}**    Howard's First Assignment of Error is overruled.

### III.   Did the Trial Court Err in Overruling Appellant's Motion to Suppress?

**{¶ 26}**    Howard's Second Assignment of Error states that:

The Trial Court Erred in Overruling the Motion to Suppress.

**{¶ 27}**    Under this assignment of error, Howard claims that police officers exceeded the scope of the search warrant issued for his mother's residence at 6135 Sandbury Drive.  Howard claims that the scope of the warrant was exceeded because the vehicle in which the cocaine was found, a Chrysler Sebring, was not listed on the warrant.  Howard also argues that the search

warrant did not apply to the detached garage in which the Chrysler Sebring was located.

{¶ 28}   We disagree with Howard's contentions because the search warrant specifically authorized officers to search the residence at 6135 Sandbury Drive and its "surrounding curtilage."

{¶ 29}   The term "curtilage" " 'includes all outbuildings used in connection with a residence, such as garages, sheds, [and] *barns* ... connected with and in close vicinity of the residence.' "  (Emphasis sic.)  *United States v. Dunn*, 480 U.S. 294, 308, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), quoting *Luman v. Oklahoma*, 629 P.2d 1275, 1276 (Okla.Crim.App.1981).

{¶ 30}   " '[V]ehicles parked in a driveway or otherwise in immediate proximity to the house are part of the curtilage and properly searched when the search warrant specifies "curtilage." ' "  (Citation omitted.)  *State v. Simpson*, 2d Dist. Montgomery No. 19011, 2002 WL 441488, *2 (Mar. 22, 2002), quoting *State v. Amendola*, 71 Ohio Misc.2d 30, 34, 654 N.E.2d 196 (6th C.P. 1995).   " ' "[A]ll federal and state courts which have addressed * * * this issue have determined that it is constitutionally permissible to search automobiles found within the curtilage of a residence which is being searched pursuant to a valid warrant." ' "   (Citation omitted.)  *Id.*

{¶ 31}   In this case, a large amount of cocaine was located in the trunk of a Chrysler Sebring that was parked in the detached garage of 6135 Sandbury Drive.  Because the detached garage is an outbuilding used in connection with the residence, it is considered a part of the surrounding curtilage.  Furthermore, the warrant specifically mentioned the two-car detached garage in its description of the residence.  The Chrysler Sebring itself is also a part of the surrounding curtilage because it was parked within immediate proximity of the residence.  Accordingly, the scope of the search warrant was not exceeded because the evidence was discovered in the surrounding curtilage of 6135 Sandbury Drive, which the warrant specifically

authorized police officers to search.

**{¶ 32}** Howard's Second Assignment of Error is overruled.

### IV. Did the Trial Court Err in Overruling Appellant's Motion
### for Relief from Joinder?

**{¶ 33}** Howard's Third Assignment of Error states that:

The Trial Court Erred in Overruling the Motion for Relief from Joinder.

**{¶ 34}** Under this assignment of error, Howard contends that the trial court abused its discretion when it failed to sever the joinder of Howard's offenses. He argues that Counts One and Two of his indictment should not have been joined with the other remaining five counts, because the first two counts occurred in Greene County and the other five counts occurred in Montgomery County. Howard also claims that joining the counts together was unduly prejudicial.

**{¶ 35}** "It is well-established that the law favors joinder because the avoidance of multiple trials conserves time and expense and minimizes the potentially incongruous outcomes that can result from successive trials before different juries." *State v. Glass,* 2d Dist. Greene No. 2000 CA 74, 2001 WL 228453, *2 (Mar. 9, 2001)*, citing *State v. Schiebel,* 55 Ohio St.3d 71, 86-87, 564 N.E.2d 54 (1990). (Other citations omitted.)

**{¶ 36}** The joinder of offenses is governed by Crim.R. 8(A) which provides:

Two or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part

of a course of criminal conduct.

{¶ 37}     The joinder of offenses committed in different jurisdictions is governed by R.C. 2901.12(H).   This statute provides that joinder is permitted when the offenses were committed "as part of a course of criminal conduct."   R.C. 2901.12(H).   "Course of criminal conduct" includes offenses that are "in furtherance of the same purpose or objective." R.C. 2901.12(H)(3). "[T]he offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred."   R.C. 2901.12(H).

{¶ 38}     A defendant can move to sever joined offenses pursuant to Crim.R.14, which states that, "If it appears that a defendant *** is prejudiced by a joinder of offenses * * * the court shall order an election or separate trial of counts, grant a severance of defendants or provide such other relief as justice requires."

{¶ 39}     "The defendant claiming error in the trial court's refusal to sever multiple charges has the burden of affirmatively showing that his rights were prejudiced."   (Citations omitted.)   *State v. Skatzes*, 2d Dist. Montgomery No. 15848, 2003-Ohio-516, ¶ 147.   "To affirmatively show that his rights have been prejudiced, the defendant 'must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.' "   *Glass,* 2d Dist. Greene No. 2000 CA 74, 2001 WL 228453 at *3-4*, quoting *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).   (Other citation omitted.)   " '[A] defendant is not prejudiced by joinder where the joined offenses are "simple and direct, so that a jury is capable of segregating the proof required for each offense." ' "_*State v. Wilson*, 2d Dist. Montgomery No. 20910, 2005-Ohio-6666, ¶ 38, quoting *State v. Fletcher*, 2d Dist. Clark No. 2003-CA-62, 2004-Ohio-4517, ¶ 41.

{¶ 40}   In this case, all of Howard's offenses relate to his sales and possession of cocaine. The offenses are therefore part of a common scheme, plan, or course of criminal conduct.  As such, they were properly joined pursuant to Crim.R. 8(A) and R.C. 2901.12(H). They were also properly venued in Greene County, since two of the offenses occurred there.  As a result, Howard had the burden to show that he was prejudiced by the joinder and that the trial court abused its discretion when it failed to sever the offenses.

{¶ 41}   Howard first asserts that he was prejudiced because the jury was presented with evidence that he engaged in criminal activity across jurisdictional lines.  According to Howard, this is prejudicial because it gives the appearance of a greater or more elaborate criminal scheme.  Howard does not cite any authority in support of this assertion.  We find that his argument has no merit, because the multi-jurisdictional offenses were properly joined and venued in Greene County.  The prosecution's presentation of evidence showing that Howard committed offenses in Greene and Montgomery counties is an obvious result of the offenses being joined together. Furthermore, the offender did in fact commit crimes in both counties; therefore it was not improper for the jury to be presented with that information.

{¶ 42}   Howard also asserts that he was prejudiced because he was prevented from giving testimony.  Howard claims that he wanted to testify against some counts at trial, but not others, and that the joinder forced him to testify in all or none.  A defendant seeking severance for this reason "must produce sufficient information regarding the nature of the testimony he wishes to give in the one case, and his reasons for not wishing to testify in the other, so as to satisfy the court that his claim of prejudice is genuine."  (Citations omitted.)  *State v. Roberts*, 62 Ohio St.2d 170, 176-177, 405 N.E.2d 247 (1980); *Accord State v. Massey*, 10th Dist. Franklin Nos. 99AP-1355, 99AP-1356, 99AP-1357, 99AP-1358, 2000 WL 1742072, *3 (Nov. 28, 2000).

**{¶ 43}** In this case, Howard did not indicate which counts he wanted to testify against, and he also failed to provide any reasons for his unknown preference. The record is completely devoid of any explanation or reason for his desire to testify against some counts, but not others. Accordingly, under *Roberts*, an affirmative showing of prejudice has not been made.

**{¶ 44}** The trial court did not abuse its discretion in overruling the motion for relief from joinder because Howard's offenses were properly joined and Howard failed to demonstrate that he was prejudiced as a result of the joinder.

**{¶ 45}** Howard's Third Assignment of Error is overruled.

### V. Did the Trial Court Err in Overruling Appellant's Motion to Continue?

**{¶ 46}** For his Fourth Assignment of Error Howard states:

> The Trial Court Erred in Overruling the Motion to Continue.

**{¶ 47}** Under this assignment of error, Howard contends that the trial court abused its discretion in failing to grant a trial continuance. Howard claims a trial continuance was necessary because defense counsel was unable to prepare for trial due to: (1) the court's late rulings on various pretrial motions; (2) never receiving copies of the audio and video recordings used by the State; (3) never receiving a legible prosecutor's agreement with the confidential informant; and (4) the inability to timely interview the confidential informant.

**{¶ 48}** "An appellate court must not reverse denial of a continuance unless an abuse of discretion has been demonstrated." (Citations omitted.) *State v. Parks*, 69 Ohio App.3d 150, 154, 590 N.E.2d 300 (2d Dist. 1990). According to *Parks*:

> "In evaluating a motion for a continuance, a court should note, *inter*
>
> *alia* : the length of the delay requested; whether other continuances have been

requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." (Citations omitted.) *Id.*

{¶ 49} We have reviewed Howard's arguments under this assignment of error, and we will address each of them separately.

### A. Late Pretrial Motions

{¶ 50} The trial court's rulings on pretrial motions were issued on Friday, April 20, 2012, three days before trial. This gave counsel a reasonable amount of time to prepare for trial. On the day of trial, defense counsel claimed that he was prevented from adequately preparing for trial because he did not receive notice of the court's rulings until late in the evening on Sunday, April 22nd. Defense counsel did not state why he received late notice. The record also indicates that defense counsel was not prevented from preparing for trial in anticipation of the court's rulings. Therefore, defense counsel's own failure to prepare in anticipation of the court's rulings partially fueled his desire for a trial continuance in this matter. As a result, we find that the timing of the pretrial motions did not prevent defense counsel from preparing for trial, and did not warrant a continuance.

### B. Copies of Audio and Video Recordings

{¶ 51} On October 27, 2011, the State filed a certification of non-disclosure, indicating

that it would not make copies of the audio and video recording evidence because the recordings disclosed the identity of the confidential informant, and disclosure would put the confidential informant's safety in danger. The certification also stated that defense counsel was free to view and inspect the recordings upon coordination with A.C.E. Protecting the safety of a witness is a permissible reason for non-disclosure of materials under Crim.R.16(D)(1). Defense counsel stated on the record that he was able to review the recordings prior to trial. Accordingly, we find that the failure to obtain copies of the audio and video recordings did not prevent defense counsel from preparing for trial, and did not warrant a continuance.

## C.   Illegible Prosecutor's Agreement

{¶ 52}     The State faxed the prosecutor's agreement with the confidential informant to defense counsel three days before trial. The record indicates that the fax was partially illegible, but defense counsel never advised the State of this until the day of trial. The record also indicates that the illegible portion of the document only contained the confidential informant's criminal history. However, defense counsel was provided with the missing information before the trial began, and was able to use it during his cross-examination of the confidential informant. Accordingly, we find that the partially  illegible prosecutor's agreement did not prevent defense counsel from preparing for trial, and did not warrant a continuance.

## D.   Untimely Confidential Informant Interview

{¶ 53}     Howard's trial counsel claims he was unable to adequately prepare for trial because his interview with the confidential informant was untimely. The record indicates that defense counsel interviewed the confidential informant four days before trial on April 19, 2012.

We find that this is an adequate amount of time to prepare his cross-examination for trial.

{¶ 54}    After reviewing the record, we find that Howard's reasons for requesting a trial continuance were insufficient to warrant a continuance, and that defense counsel partially contributed to the circumstances giving rise to the need for a continuance.    Accordingly, the trial court's decision overruling the motion for trial continuance was not an abuse of discretion.

### VI. Did the Trial Court Deny Appellant's Right to a Fair Trial and Due Process Due to Cumulative Error?

{¶ 55}    For his Fifth Assignment of Error, Howard states:

The Cumulative Nature of the Trial Court's Error Denied Appellant the Right to a Fair Trial and Due Process.

{¶ 56}    Under this assignment of error, Howard advances a claim of cumulative error. He contends that the effect of the errors alleged in the first four assignments of error cumulatively deprived him of a fair trial and due process.

{¶ 57}    "It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. To find cumulative error present, we first must find multiple errors committed at trial.    We then must find a reasonable probability that the outcome below would have been different but for the combination of separately harmless errors." (Citations omitted.)    *State v. Carr*, 2d Dist. Montgomery No. 22603, 2009-Ohio-1942, ¶ 74.

{¶ 58}    We have reviewed Howard's other arguments and found no errors. Therefore, we find no cumulative error.    Accordingly Howard's Fifth Assignment of Error is overruled.

### VII.   Conclusion

**{¶ 59}** Having overruled all of Christopher T. Howard's assignments of error, we hereby affirm the judgment of the trial court.

. . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concurring in judgment and opinion and writing separately:

**{¶ 60}** We concur with the majority that the trial court did not abuse its discretion in denying a motion for a continuance; specifically, we agree that the record does not demonstrate that the Appellant was prejudiced by the State's not delivering a hard copy of a video prior to the day of trial.

**{¶ 61}** We write separately to express an opinion that Crim.R. 16(D) requires more than a generalized certification that disclosure of certain information "jeopardizes both the life of the confidential informant and puts sensitive investigative techniques at risk." (State's Criminal Rule 16 Certification of Non-Disclosure, filed October 27, 2011).

**{¶ 62}** Crim.R. 16(D) requires that the prosecuting attorney certify to the court that the prosecutor is not disclosing material or portions of material otherwise subject to disclosure because the prosecutor has "reasonable, articulable grounds to believe that disclosure will compromise the safety of a witness, victim, or third party, or subject them to intimidation or coercion," Crim.R. 16(D)(1), or that "[d]isclosure will compromise an ongoing criminal investigation or a confidential law enforcement technique or investigation * * *," Crim.R. 16(D)(3). "Reasonable, articulable grounds may include, but are not limited to, the nature of the case, the specific course of conduct of one or more parties, threats or prior instances of witness tampering or intimidation, whether or not those instances resulted in criminal charges, whether the defendant is pro se, and any other relevant information." Crim.R. 16(D).

{¶ 63} In October, the prosecutor certified non-disclosure of "audio and video surveillance recordings." The certification stated that the identity of "one or more confidential informants is revealed in these recordings." It further stated:

> [I]n addition, specific investigative techniques utilized by the drug task force are revealed on these videos. * * * [T]o produce copies and provide these copies to the defendant jeopardizes both the life of the confidential informants and puts sensitive investigative techniques at risk. To provide the personal identifying information of a confidential informant when that informant is a potential witness against a defendant puts that informant's life at risk. This is especially true in this case where the Defendant is facing significant charges and the Defendant is out on bond, and no trial date has been set. The threat posed to the informant comes not necessarily from the Defendant himself, but from his associates in his drug enterprise, and from the internet, where videos of confidential informants and undercover police officers have become all too frequently uploaded and disseminated to the general public.

{¶ 64} We understand that the certification can be – and often must be – nonspecific and that the defense can question it pursuant to a Crim.R. 16(F) motion; the trial court then reviews the prosecutor's decision for abuse of discretion. *See*, *e.g.*, *State v. Gillard*, 40 Ohio St.3d 226, 533 N.E.2d 272 (1988), reversed on other grounds; *State v. McGuire*, 80 Ohio St.3d 390, 685 N.E.2d 1112 (1997).

{¶ 65} However, to the extent possible, the certification must be more than a request for quasi-judicial notice that undercover investigations of drug offenses involve serious risks to those involved. "Articulable" is the key word, as it is, analogously, in *Terry* stop and frisk cases.

. . . . . . . . . .

Copies mailed to:

Elizabeth Ellis
Jay A. Adams
Hon. Stephen Wolaver