**Jimmie L. CARTER, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 27S02–9712–CR–00656.

Supreme Court of Indiana.

March 3, 1999.

Robert J. Bratch, Jerry T. Drook, Marion, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, John B. Herriman, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

Defendant Jimmie Carter's probation was revoked based on urinalysis results indicating marijuana use. The Court of Appeals found the urinalysis evidence inadmissible. Because strict evidentiary standards do not apply in probation revocation hearings, this evidence was admissible. Accordingly, we affirm the trial court.

### Background

On October 16, 1995, Defendant pled guilty to the charge of Operating a Motor Vehicle While Intoxicated, a Class D Felony.[1] The Defendant was given a one and one half year jail sentence with all but thirty (30) days suspended. In addition, Defendant was given a $300.00 fine and placed on probation for one and one-half years. Under the terms of his probation, Defendant was to refrain from committing any future crimes, including the use of illegal drugs, and submit to drug testing at the request of his probation officer. On January 19, 1996 and again on March 22, 1996, Defendant submitted urine samples which tested positive for the presence of cannibinoids, a metabolite of marijuana.

Based on these test results, Defendant's probation officer filed a Petition for Revocation of Probation. On June 18, 1996, the trial court conducted a probation revocation hearing at which the State presented its evidence showing that Defendant tested positive for marijuana use. Among those who testified for the State was Tom Pulley ("Pulley"), the laboratory technician who administered Defendant's urine screen. Pulley testified as to his experience and training in the use of urinalysis equipment and the procedures used in administering the urinalysis. When the State sought to introduce the results of the urinalysis into evidence as part of Pulley's testimony, Defendant objected to its admission on the grounds that Pulley was not qualified to render expert testimony. However, the trial court admitted the testimony over Defendant's objection. At the conclusion of the hearing, the trial court found that, by twice testing positive for marijuana use, the Defendant had violated the terms of his probation. Subsequently, the trial court terminated Defendant's probation and ordered him to serve an additional one year of his suspended prison sentence.

Defendant appealed. The Indiana Court of Appeals reversed, holding that the trial court erred in its admission of Pulley's testimony because the State failed to provide a sufficient evidentiary foundation for the qualifications of Pulley and for the reliability of the urinalysis equipment used. *Carter v. State,* 685 N.E.2d 1112, 1115 (Ind.Ct.App. 1997).

### Discussion

The Court of Appeals concluded that to furnish the requisite foundation for the admission of expert testimony at probation revocation hearings, the State must establish that (1) the technician performing the test understands the urinalysis procedure, and (2) the equipment used to perform the test is generally accepted in the urinalysis field. *Carter,* 685 N.E.2d at 1114. The second prong of this two-part test, requiring that the equipment used be "sufficiently established to have gained general acceptance in the particular field in which it belongs[ ]," is taken from *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923). The State contends that the Court of Appeals employed the wrong standard of evidence governing the admission of expert testimony at probation revocation hearings. We agree.

It appears that the Court of Appeals decided to apply the *Frye* "general acceptance" test for scientific evidence based on the following reasoning: First, Indiana Rules of Evidence 403 and 702 supersede the *Frye* test. Second, the Rules of Evidence provide that "[t]he rules, other than those with respect to privileges, do not apply in ... [p]roceedings related to ... sentencing, probation, or parole." Ind. Evidence Rule

---

1. Indiana Code § 9–30–5–3 (1993).

101(c)(2). Third, because the Rules of Evidence do not apply, common law rules in effect prior to the adoption govern.[2] And because the *Frye* test was the applicable common-law rule, the Court of Appeals reasoned that "reliance on *Frye* is still valid for probation matters." *Carter*, 685 N.E.2d at 1115 n. 3.

We have disapproved such reasoning in another opinion decided today. In *Cox v. State*, 706 N.E.2d 547 (Ind.1999), we make clear that in probation revocation hearings, judges may consider any relevant evidence bearing some substantial indicia of reliability. This includes expert testimony and scientific evidence. Of course, as we made clear in *Cox*, judges are not bound to admit all evidence presented to the court. And, in the absence of strict evidentiary rules, judges carry a special responsibility in assessing the weight, sufficiency and reliability of proffered evidence. *Id.*, 706 N.E.2d at 551.

The Court of Appeals held that the State did not establish that the lab technician qualified as an expert and failed to establish the scientific reliability of the urinalysis equipment itself. Specifically, the Court of Appeals rejected Pulley's qualification as an expert because he "could not explain the scientific basis for the test." *Carter*, 685 N.E.2d at 1115. As a lab technician responsible for the operation of urinalysis equipment, Pulley testified that he had been employed in this capacity for more than five years. In this period, Pulley testified that he tested more than ten thousand samples. Pulley further testified that he had received all of the training necessary to become an operator of the CIVA[3] urinalysis machine, attending CIVA schooling in California for four weeks. Moreover, he demonstrated that he possessed expertise in the use of the equipment, testifying as to the how the CIVA machine worked, how it was operated, how often it was tested, the substances it tested, and how the results of such tests were interpreted. Regardless of whether these credentials are sufficient to qualify Pulley as an expert under either the *Frye* test or the Rules of Evidence, we find them adequate for consideration by a trial court under the evidentiary standards applicable to probation revocation hearings.

As for the Court of Appeals' conclusion that the State failed to establish the scientific reliability of the urinalysis equipment, we note Judge Friedlander's dissent where he observed, "[i]t is beyond debate that urinalysis has achieved a sufficient level of scientific reliability to be accepted into evidence by our courts." *Carter*, 685 N.E.2d at 1117 (Freidlander, J., dissenting). Urinalysis technology is hardly novel and has become a conventional means of drug-testing, the results of which have been deemed reliable in Indiana courts. *Cf. Penrod v. State*, 611 N.E.2d 653, 654 (Ind.Ct.App.1993) (ADX Abbott and EMIT urinalysis systems have reached level of general acceptance in scientific community to be generally admissible).[4] Given the evidentiary standards applicable to probation revocation proceedings, we find no basis for reversing the trial court's admission of the test results.

### Conclusion

Having previously granted transfer, thereby vacating the decision of the Court of

---

**2.** This conclusion is incorrect. *See Cox v. State*, 706 N.E.2d 547, 551 n. 10 (Ind. 1999).

**3.** There appears to be some mistake in the record as to the spelling of brand name of the equipment at issue. The record identifies the equipment in question as a 'CIVA' machine. However, as the majority below points out there are references elsewhere to 'Seva' and 'Syva' machines. *See Carter*, at 1115. We agree with Judge Friedlander that "[b]ecause of the phonetic similarity and the context in which the references appear in the record, it is clear to [the Court] that 'Seva', 'Syva', and 'CIVA' all refer to the same machine." *Carter*, at 1116.

**4.** In its findings as to the admissibility of urinalysis evidence generally, and the ADX Abbott system in particular, the court in *Penrod* also references "Seva" urinalysis machines at issue in the case before us, stating that, "[n]either do we have any difficulty in ruling that ADX Abbott system has reached a similar level of acceptance, because according to Penrod, 'there is no difference between the Abbott Laboratory machine and the EMIT Coubus or the Seva Corporation. . . . Those are basically the same technologies. Although the names may be a little different they are basically the same.'" *Penrod*, 611 N.E.2d at 654.

Appeals, Ind. Appellate Rule 11(B)(3), we now affirm the trial court's revocation of Defendant's probation.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.