116 Cal.Rptr.2d 331 (2002)
95 Cal.App.4th 1210
The PEOPLE, Plaintiff and Respondent,
v.
Jennifer Maxine NOLAN, Defendant and Appellant.
No. B149669.
Court of Appeal, Second District, Division Six.
February 4, 2002.
Rehearing Denied March 5, 2002.
Review Denied May 1, 2002.
*332 Julia S. Swanson, under appointment by the Court of Appeal, Santa Barbara, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Brad D. Levenson, *333 Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.
GILBERT, P.J.
Here we hold that the Kelly/Frye test does not bar admission into evidence of an ADX Abbott Bench Analyzer (hereafter sometimes ADX Abbott) urinalysis test.[1]
Jennifer Maxine Nolan appeals a judgment finding that she violated her probation by testing positive for drug use. The court sentenced her to serve 120 days in jail. We affirm.

FACTS
Nolan pled no contest to passing a bad check (Pen.Code, § 476) in 1998. Her terms of probation required her to submit to drug testing and not to use or possess illegal drugs. In 2000 the court ordered her to participate in the drug court program.
Nolan gave a container with her urine sample to Debra Glenn, a counselor in her drug court program. Michael Bove, the program coordinator of the San Luis Obispo drug court, tested that sample which was "positive for marijuana, THC." At Nolan's probation revocation hearing, Bove testified he used an ADX Abbott Bench Analyzer to test the urine sample.
Nolan's counsel objected to the introduction of the results on the basis of the Kelly/Frye doctrine. He claimed there was no foundation for the accuracy or scientific acceptance of the machine. The court overruled the objection. Bove testified that his job involved conducting and supervising urine testing. His program conducted 70 to 75 urine tests a week and had used the bench analyzer since August of 1999. A laboratory technician from the Abbott Corporation trained him on proper use.
Nolan's counsel did not cross-examine Bove about the urine test, and Nolan neither testified nor presented witnesses.

DISCUSSION

I. Mootness
The Attorney General contends this appeal is moot because Nolan has completed her jail term.
Nolan served her sentence, but that does not mean her appeal is moot. (In re Maria A. (1975) 52 Cal.App.3d 901, 903, 125 Cal.Rptr. 382.) The probation violation finding is part of her permanent record. Even if a defendant is not subject to further punishment, the appeal affords the opportunity to erase the "stigma of criminality." (In re Dana J. (1972) 26 Cal.App.3d 768, 771, 103 Cal.Rptr. 21.) Moreover, Nolan raises legal challenges to the validity of the judgment. To conclude that this appeal is moot would mean these issues would evade appellate review solely because a jail sentence has been served. We thus decide Nolan's appeal on the merits. (People v. Quinn (2001) 86 Cal. App.4th 1290, 1293, 103 Cal.Rptr.2d 915.)

II. Kelly/Frye

Nolan contends that the ADX Abbott test results were inadmissible under the Kelly/Frye rule.
Under the Kelly/Frye doctrine, evidence of a new scientific technique is not admissible unless it has gained general acceptance in the scientific community. (People v. Bury (1996) 41 Cal.App.4th 1194, 1201, 49 Cal.Rptr.2d 107; People v. Kelly, supra, 17 *334 Cal.3d 24, 30, 130 Cal.Rptr. 144, 549 P.2d 1240; Frye v. United States, supra, 293 F. 1013, 1014, superseded by the Fed. Rules Evid., see Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993) 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.) Nolan and the Attorney General agree that the doctrine applies to trials, but disagree as to whether it applies to probation revocation hearings.
The Attorney General contends it does not apply to such proceedings because the rules of evidence are relaxed and hearsay is admissible. Such factors, however, do not necessarily preclude the application of the Kelly/Frye rule. (Seering v. Dept. of Social Services (1987) 194 Cal.App.3d 298, 313, 239 Cal.Rptr. 422 [doctrine was applicable in a state administrative hearing to revoke a day care operator's license.].) Yet, at least one court has adopted the Attorney General's position. (Carter v. State (Ind.1999) 706 N.E.2d 552, 553-554.)
But we need not decide the general applicability of this doctrine to probation revocation hearings because this case does not involve a new scientific technique. The ADX Abbott is a machine which tests urine samples to determine drug usage. Urinalysis is not new. It is a medically accepted and widely used method of drug testing. (In re Marks (1969) 71 Cal.2d 31, 42, 77 Cal.Rptr. 1, 453 P.2d 441.) "It has been routinely used in California courts...." (People v. Municipal Court (Sansone) (1986) 184 Cal.App.3d 199, 201, 228 Cal.Rptr. 798 [reversible error for trial court to apply Kelly/Frye analysis to urinalysis because it is a well-established procedure].) The Legislature has incorporated urine testing as part of the implied consent law for almost four decades. (People v. Municipal Court (Sansone), supra, at p. 201, 228 Cal.Rptr. 798; Veh. Code, § 23612.) It is also part of the San Luis Obispo drug court testing program.
Nolan contends that the ADX Abbott is not an accepted device because it was designed for use by drug counselors instead of laboratory technicians. But the acceptance of the scientific method does not depend on who operates the machinery. (People v. Cooper (1991) 53 Cal.3d 771, 814, 281 Cal.Rptr. 90, 809 P.2d 865.) The ADX Abbott has reached a "level of general acceptance" in the scientific community. (Carter v. State, supra, 706 N.E.2d at p. 554.) Courts have relied on its urine test results to detect probation violations. (Penrod v. State (Ind.Ct.App. 1993) 611 N.E.2d 653, 654-655.) It is an accurate test for the presence of marijuana in biological fluids. (Penrod v. State, supra, at p. 655; Koenig v. Vannelli (9th Cir.1992) 971 F.2d 422, 422-423 [Ninth Circuit rejected a challenge to the use of the ADX Abbott by state prison officials in their random drug testing program].) The ADX Abbott drug analyzer is used to test for cocaine in urine samples. (People v. Toran (1991) 219 Ill.App.3d 991, 993, 162 Ill.Dec. 632, 580 N.E.2d 595, 598.)
Nolan contends it is new. But jurisdictions including the Ninth Circuit have accepted its validity for almost a decade. (Koenig v. Vannelli, supra, 971 F.2d at pp. 422-423; Penrod v. State, supra, 611 N.E.2d at pp. 654-655.) Both the ADX Abbott and the older EMIT (enzyme immunoassay test) use the well-accepted immunoassay scientific technique to detect drugs in urine. (Koenig, at p. 422, citing "Urine Testing in the Detection of Drugs of Abuse" 148 Archives of Internal Medicine 2407 (November 1988); Penrod, at p. 654; Carter v. State, supra, 706 N.E.2d at p. 554; Spence v. Farrier (8th Cir.1986) 807 F.2d 753, 754-756.)
There will always be new devices to implement established scientific methods. But a Kelly/Frye hearing is not required for new devices; it applies to new methodologies. *335 (People v. Bury, supra, 41 Cal. App.4th at p. 1202, 49 Cal.Rptr.2d 107.) Once a test has obtained scientific acceptance, the court may rely on it and those who challenge it must produce evidence to support their objections. (People v. Municipal Court (Sansone), supra, 184 Cal. App.3d at p. 202, 228 Cal.Rptr. 798.)
In Bury we rejected an argument similar to Nolan's regarding PAS (Preliminary Alcohol Screening) breath testing devices. We noted that breath testing for alcohol was a well-established scientific technique and as of 1989 there had been 56 new devices. We stated, "requiring each new breath-testing device or mechanism to be subjected to a Kelly/Frye analysis would lead to unnecessary and unduly burdensome litigation." (People v. Bury, supra, 41 Cal.App.4th at p. 1202, 49 Cal. Rptr.2d 107.) We concluded that the way to test the foundational requirements was not through a Kelly/Frye hearing but in cross-examination. (Ibid.) We stated defendant "should have questioned whether the testing apparatus was in working order, whether the test was properly administered, and whether the operator was competent and qualified." (Ibid.) Moreover, defendants may also produce evidence in the defense case to challenge the scientific accuracy of the results or the testing machinery. (Ibid.; People v. Municipal Court (Sansone), supra, 184 Cal. App.3d at p. 202, 228 Cal.Rptr. 798.)
But Nolan introduced no evidence, nor did she cross-examine Bove about the test or the machine. She contends the machine may not be accurate. But the place to present evidence was in the trial court. (People v. Bury, supra, 41 Cal.App.4th at pp. 1202-1203, 49 Cal.Rptr.2d 107.) Nolan could have cross-examined Bove about the accuracy of the machine. She could have called expert witnesses or tested the machine or the sample. (People v. Moore (1983) 34 Cal.3d 215, 220, 193 Cal.Rptr. 404, 666 P.2d 419.) Her failure to do this waived her claims about the validity of the results. (Bury, supra, at pp. 1202-1203, 49 Cal.Rptr.2d 107.)
The court did not err by admitting the ADX Abbott results as evidence of a probation violation. (Carter v. State, supra, 706 N.E.2d at p. 554 [court properly admitted ADX Abbott urinalysis results as proof of probation violation without Frye evidence]; People v. Brown (1989) 215 Cal. App.3d 452, 454-55, 263 Cal.Rptr. 391 [police officer's hearsay testimony about result of chemist's test admissible in probation revocation hearing even though it would be inadmissible at a trial].) Moreover, the drug court program utilized this machine to perform thousands of urine tests. There is no evidence to show that the machine was either malfunctioning or that its test results were unreliable.

III. Bove's Testimony
Nolan contends that Bove's testimony about the test results was inadmissible hearsay and it denied her due process of law. But her failure to object on these grounds in the trial court waived these issues. (People v. Bury, supra, 41 Cal. App.4th at p. 1201, 49 Cal.Rptr.2d 107.)
She contends that Bove had neither the training nor qualifications to either use the bench analyzer or test for drug use. She states that her urine samples should have been sent to a laboratory because Bove was only a drug "counselor."
But Nolan did not object to Bove's expertise or qualifications at the hearing. This waived the claim that he was not qualified to testify. (People v. Roberts (1992) 2 Cal.4th 271, 298, 6 Cal. Rptr.2d 276, 826 P.2d 274.) But even absent this waiver, the trial court's reliance on his testimony will not be disturbed on *336 appeal unless Nolan shows an abuse of discretion. (Ibid.)
Bove was not simply a drug counselor. He was the program coordinator for the San Luis Obispo drug court. His job involved both conducting and supervising urine testing. His program conducted an average of 70 to 75 urine tests each week and had used the ADX Abbott Bench Analyzer since August of 1999. A lab technician from the company that manufactured the bench analyzer trained him "how to use the equipment properly." From this the court could find Bove qualified to testify about the test results at a probation revocation hearing. (Carter v. State, supra, 706 N.E.2d at p. 554; People v. Brown, supra, 215 Cal.App.3d at p. 455, 263 Cal.Rptr. 391.)
Glenn testified that she took the urine sample from Nolan and it was labeled, dated, sealed and stored for testing. Bove testified that he tested Nolan's sample and it was positive for "marijuana, THC." Nolan presented no evidence to either contradict this or to show that she was drug free. There was no evidence of any irregularities in either the chain of custody of the sample or in the testing procedure. From the evidence, the trial court could reasonably infer that Nolan violated her probation by using drugs.
The judgment is affirmed.
We concur: YEGAN, and PERREN, JJ.
NOTES
[1] We use the popular designation Kelly/Frye (People v. Kelly (1976) 17 Cal.3d 24, 30, 130 Cal.Rptr. 144, 549 P.2d 1240; Frye v. United States (D.C.Cir.1923) 293 F. 1013, 1014) but the Kelly test may be more apt. (See People v. Leahy (1994) 8 Cal.4th 587, 591, 34 Cal. Rptr.2d 663, 882 P.2d 321.)