Filed 8/29/13  P v. Chavarria CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARIO CHAVARRIA,<br><br>    Defendant and Appellant. | H038745<br>(Monterey County<br>Super. Ct. No. SS090619) |

Defendant Mario Chavarria appeals after the trial court found him in violation of his probation.  The trial court found that defendant delayed an officer in the performance of his duties in violation of Penal Code section 148, subdivision (a)(1),[1] and thus that he failed to obey all laws.  On appeal, defendant contends the probation revocation order must be reversed because the trial court's finding that he violated section 148 was based on his exercise of free speech, which was protected under the First Amendment.[2]

The Attorney General has filed a motion to dismiss, contending that this appeal is moot because defendant's probation was terminated after he was found to have committed another probation violation.

---

[1] All further statutory references are to the Penal Code unless stated otherwise.

[2] In the opening brief, defendant also challenged an alcohol-related probation condition as unconstitutionally vague and overbroad, but in his reply brief, he conceded that the issue is now moot.

As we shall explain, defendant's claim is not moot, so we will deny the motion to dismiss. We will affirm the judgment because the trial court's finding that defendant violated section 148 was not based on speech protected under the First Amendment.

## BACKGROUND

### A. *Underlying Offense*

On October 21, 2008, defendant and two other males entered the Moss Landing Inn Bar, attacked a man in the bar, then fled. Defendant subsequently pleaded guilty to assault by means of force likely to produce great bodily injury. (Former § 245, subd. (a)(1).) On May 31, 2011, defendant was placed on probation with imposition of sentence suspended. One of the conditions of defendant's probation was that he obey all laws.

### B. *First Probation Violation*

A notice of probation violation was filed on May 21, 2012. The probation officer alleged that defendant had violated section 148, subdivision (a)(1) (willfully resisting, delaying, or obstructing an officer) and section 647, subdivision (f) (public intoxication). The probation officer indicated that those charges were being filed in a new criminal case. In a supplemental declaration, the probation officer alleged that defendant had also violated gang-related conditions of his probation.

A contested probation violation hearing was held on June 28, 2012. Monterey County Deputy Sheriff Chad Giraldez testified at the hearing. He and Deputy Sinor had been on duty just outside the gate of the Artichoke Festival in Castroville on the afternoon of May 20, 2012. The deputies saw Jesus Martinez drinking beer outside of the gate, and they asked him to pour the beer out. Martinez took a few more sips and then poured the beer out. The deputies had Martinez walk to the rear of the patrol car.

The deputies had seen Martinez leave the Artichoke festival with five or six other people. As the deputies were detaining Martinez, the rest of the group began yelling at

2

the deputies, telling them "not to arrest him, to let him go." The deputies told the group to move along and go home. All but defendant complied with that directive.

Deputy Giraldez asked defendant "repeatedly at least four times" to leave the area. Deputy Sinor asked defendant to leave "several more" times, telling him "you're interfering." Defendant, who was standing about 100 feet away, was loud and disruptive.

Deputy Giraldez explained how defendant was obstructing the deputies: "Well, he was being disruptive. He was using profanity, he was yelling, he was d[i]stracting myself and Deputy Sinor from the person we had detained. It's an officer safety issue if he starts yelling and getting out of line and we don't control the situation, either his friends can come back or someone else can misbehave while they are exiting the festival." Deputy Giraldez ultimately went over to defendant and contacted him, which delayed him in "performing [his] duties relative to the person with the beer."

At the end of the probation violation hearing, defendant argued that his conduct was not a violation of section 148 because he was merely "exercising his free speech." The trial court disagreed, explaining that the statute does not just prohibit resisting arrest: "It's delaying an officer in the performance of their duties." The trial court found that based on the testimony, defendant "did delay an officer in the performance of his duties."

The trial court found that the other probation violation allegations were not true.

On August 9, 2012, the trial court continued defendant on probation with the same terms and conditions, but added new conditions, including a condition barring defendant from possessing or consuming alcohol and from being in a place where alcohol is the main item of sale. The trial court dismissed the pending misdemeanor case.

3

### C. Second Probation Violation[3]

On November 13, 2012, defendant admitted violating his probation. On the same day, he pleaded no contest to possession for sale of a controlled substance (Health & Saf. Code, § 11351) and misdemeanor participation in a criminal street gang (§ 186.22, subd. (a)) in case No. SS121906A.

On January 29, 2013, the trial court terminated defendant's probation and sentenced him to a three-year prison term for the original assault charge. That same day, he was sentenced to a concurrent three-year term in case No. SS121906A.

## ANALYSIS

### A. Mootness

The Attorney General argues that this appeal should be dismissed as moot, claiming that because defendant's probation has now been terminated due to events following the initial revocation, his current appeal " 'involves only abstract or academic questions of law.' " (*People v. Delong* (2002) 101 Cal.App.4th 482, 486 (*Delong*).) The Attorney General claims that a reversal here " ' "would be without practical effect." ' " (*Ibid.*)

Defendant disagrees that his challenge to the probation revocation is moot. He points out that "a mootness inquiry may also include consideration of whether prejudicial consequences or disadvantageous collateral consequences can be ameliorated by a successful appeal." (*Delong, supra,* 101 Cal.App.4th at p. 487; see also *People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368-1369.) Defendant asserts that the probation violation may have future collateral consequences, pointing out that a defendant's poor performance on probation can be used in determining whether to grant probation

---

[3] Pursuant to respondent's request in the motion to dismiss, we take judicial notice of several minute orders relating to the second probation violation.

(Cal. Rules of Court, rules 4.414(b)(2))[4] and as a circumstance in aggravation (rule 4.421(b)(5)).

A similar argument was made in *People v. Nolan* (2002) 95 Cal.App.4th 1210 (*Nolan*), where the defendant challenged the admission of evidence supporting a probation violation. The *Nolan* court rejected the Attorney General's claim that the issue was moot because the defendant had served her sentence. The court explained: "The probation violation finding is part of her permanent record. Even if a defendant is not subject to further punishment, the appeal affords the opportunity to erase the 'stigma of criminality.' [Citation.] Moreover, Nolan raises legal challenges to the validity of the judgment. To conclude that this appeal is moot would mean these issues would evade appellate review solely because a jail sentence has been served." (*Id*. at p. 1213.)

The Attorney General claims that "[b]ased on [defendant's] criminal history, rule 4.421(b)(5) would apply to [defendant] regardless of whether the probation violation in this case were reversed." The record does reflect that defendant committed the assault just a few weeks after being placed on probation for driving without a license in violation of section 12500, subdivision (a), and as noted above, defendant subsequently admitted violating probation in this case. Based on those two violations, a trier of fact could reasonably determine that "[t]he defendant's prior performance on probation or parole was unsatisfactory." (Rule 4.421(b)(5); see also rule 4.414(b)(2).) However, it is also conceivable that a trier of fact might determine that, with only two probation violations, defendant's "prior performance on probation" was not so poor as to merit an upper term or denial of probation. In fact, the trial court in this case made such a finding when it continued defendant on probation after the instant violation.

_____

[4] All further rule references are to the California Rules of Court unless stated otherwise.

Moreover, as in *Nolan,* the instant probation violation finding will be part of defendant's "permanent record," and even if he is not subject to further punishment, this appeal affords him "the opportunity to erase the 'stigma of criminality' " stemming from this particular incident. (*Nolan, supra,* 95 Cal.App.4th at p. 1213.) Moreover, the appeal "raises legal challenges to the validity of the judgment," and the issue raised "would evade appellate review" solely because defendant committed a subsequent probation violation. (*Ibid.*)

Before determining that it is appropriate to decide defendant's argument on the merits, we address his claim that the Attorney General has conceded that the probation violation was improperly based on his exercise of free speech. As defendant points out, the Attorney General did not address the merits of that issue in the respondent's brief, which argues only that the issue is moot. The Attorney General has not, however, made an express concession, and even if there had been an express concession, we would only be required to give it "appropriate deference"; we would not be bound by it. (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1021.) We will proceed to the merits of defendant's appeal.

### B.     First Amendment Challenge

A trial court has "very broad discretion in determining whether a probationer has violated probation," and thus on appeal the appellate court generally reviews a probation violation finding for abuse of that discretion. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) In this case, defendant's challenge is based entirely on the First Amendment, and as he points out, we must therefore independently review the record to ensure that his "free speech rights have not been infringed" by the trial court's determination that he violated section 148. (See *In re George T.* (2004) 33 Cal.4th 620, 632; *People v. Jackson* (2005) 128 Cal.App.4th 1009, 1021.)

6

Below, the trial court found that defendant's disruptive speech was not protected by the First Amendment, because it delayed the officers from performing their duties. Based upon our independent review of the record, we agree.

"Although section 148 proscribes resisting, delaying, or obstructing a police officer, 'the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.' [Citation.] In fact, '[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.' [Citations.] Even though the police may dislike being the object of abusive language, they are not allowed to use the awesome power which they possess to punish individuals for conduct that is not only lawful, but which is protected by the First Amendment. [Citation.] For this reason, section 148 must be applied with great care to speech. [Citation.] Although fighting words or disorderly conduct may lie outside the protection of the First Amendment, the areas of unprotected speech are very narrow. [Citation.]" (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1330-1331 (*Muhammed C.*).)

As this court recognized in *Muhammed C.,* "verbal conduct" may fall outside the parameters of First Amendment protection. (*Muhammed C., supra,* 95 Cal.App.4th at p. 1331.) In *Muhammed C.,* the verbal conduct was Muhammed's act of "speaking to a detained suspected criminal in police custody when ordered to stop." (*Ibid.*) The suspect was sitting in the back of a police vehicle while his own car was being processed across the street. Muhammed ignored three officers' orders for him to step away from the vehicle, and he continued talking to the suspect. He also "extended his right hand out to the back, raising his palm towards the officers," in a gesture of apparent defiance. (*Id.* at p. 1328.) This court upheld the finding that Muhammed had violated section 148 by willfully delaying the officers' processing of the suspect's vehicle "by refusing the officers' repeated requests that he step away from the patrol car." (*Id.* at p. 1330.) This court also held that Muhammed's verbal conduct was not "akin to a mere verbal

challenge to police officers" and thus lacked First Amendment protection. (*Id.* at p. 1331.)

The United States Supreme Court has recognized that a person may be criminally prosecuted, without running afoul of the First Amendment, for verbally interrupting an officer who is performing his or her duties. (*Houston v. Hill* (1987) 482 U.S. 451 (*Hill*).) The *Hill* case involved an ordinance making it unlawful for a person to, inter alia, " 'interrupt any policeman in the execution of his duty.' " (*Id.* at p. 455.) The defendant had interrupted officers by shouting at them while they were speaking with a third party. The defendant was arrested for violating the ordinance but acquitted. He later filed a lawsuit seeking a declaratory judgment as to the constitutionality of the ordinance, "both on its face and as it had been applied to him." (*Ibid.*)

The lower courts upheld the *Hill* ordinance insofar as it had been applied to the defendant (*Hill, supra,* 482 U.S. at p. 457), and the high court addressed only the question whether the ordinance was unconstitutional on its face. The high court concluded that the ordinance was substantially overbroad under the First Amendment, because it "criminalize[d] a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement." (*Id.* at p. 466.) However, the high court was careful to note that "under a properly tailored statute," it would be constitutional to " 'punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection.' [Citation.]" (*Id.* at p. 463, fn. 11; see also *Colten v. Kentucky* (1972) 407 U.S. 104, 109 [an officer is entitled to carry out his or her duties "free from possible interference or interruption from bystanders, even those claiming a third-party interest in the transaction"].)

*Hill* thus establishes that when a person's words go "beyond verbal criticism, into the realm of interference with [an officer's performance of his or her] duty," the First Amendment does not preclude criminal punishment. (*People v. Lacefield* (2007) 157

Cal.App.4th 249, 261 (*Lacefield*), disapproved on other grounds by *People v. Smith* (2013) 57 Cal.4th 232, 242; see also *People v. Green* (1997) 51 Cal.App.4th 1433, 1438 [defendant's attempts to intimidate the suspected victim into denying the commission of the offense impeded the officer's investigation and thus were not protected by the First Amendment].)

Here, as the trial court found, defendant's words went "beyond verbal criticism, into the realm of interference with [an officer's performance of his or her] duty." (*Lacefield, supra,* 157 Cal.App.4th at p. 261.) Deputy Giraldez testified that defendant's profanity and loud yelling distracted the deputies while they were detaining Martinez, creating an "officer safety issue." Deputy Giraldez further testified that because he had to go over and contact defendant to stop the disruption, he was delayed in completing the detention.

Defendant asserts his case is akin to *People v. Quiroga* (1993) 16 Cal.App.4th 961 (*Quiroga*). In *Quiroga,* the police entered an apartment where the defendant was attending a party. When an officer told the defendant to sit down, he "argued before complying with the order." (*Id.* at p. 964.) As the officer questioned another subject, the defendant told him that the police had no right to be in the apartment and that they should leave. The defendant was generally uncooperative with the officer's other orders, but he eventually complied each time. The court found nothing in this conduct to "justify a charge of violating Penal Code section 148." (*Id.* at p. 966.) The statute does not "criminalize[ ] a person's failure to respond with alacrity to police orders," and the defendant "possessed the right under the First Amendment to dispute [the officer's] actions." (*Ibid.*)

*Quiroga* is not analogous to this case. Here, defendant was not merely disputing the deputies' actions, nor did he eventually comply with their numerous orders to leave the area. Rather, he continued to be loud and disruptive. He distracted the deputies while

9

they were detaining Martinez, creating an "officer safety issue," and delayed them in completing the detention.

In sum, defendant's speech was not protected by the First Amendment because it was so disruptive that it delayed the officers from performing their duties. We therefore uphold the trial court's order revoking defendant's probation based on his violation of section 148.

## DISPOSITION

Respondent's motion to dismiss is denied. The August 9, 2012 order revoking defendant's probation is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MÁRQUEZ, J.