Filed 12/11/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>ANTONIO GERMAN ARMAS,<br><br>   Defendant and Appellant. | D082091<br><br><br>(Super. Ct. No. FWV18003945) |

APPEAL from an order of the Superior Court of San Bernardino County, Mary E. Fuller, Judge. Dismissed as moot.

Eric Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Antonio German Armas of one count of distributing child pornography (Pen. Code,[1] § 311.1, subd. (a)), and one count of

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

possessing child pornography (§ 311.11, subd. (a)).  On August 17, 2021, Armas was placed on two years of formal probation, to expire on August 16, 2023.  The trial court *twice* found that Armas violated the terms of his probation, but both times it declined to terminate probation.  As a result of the revocation proceedings, the term of Armas's probation was extended, with a new expiration date of June 9, 2024.

In an opinion filed March 6, 2024, we rejected Armas's appeal from the *second* order finding that he (again) violated of the terms of his probation. (*People v. Armas* (Mar. 6, 2024, D082002) 2024 WL 957990 [nonpub. opn.] (*Armas I*).)[2]  Here, Armas appeals from the trial court's *first* order finding that he violated the terms of his probation.

Armas has now completed his probation.  As we will explain, his appeal is accordingly moot, and we therefore dismiss it.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

After Armas was convicted of two counts relating to child pornography (§§ 311.1, subd. (a), 311.11, subd. (a)), the trial court placed Armas on formal probation for a period of two years, to expire August 16, 2023.

On April 5, 2022, Armas's probation officer filed a petition alleging that Armas had violated the terms of probation.  At a September 9, 2022 probation revocation hearing, the trial court (1) found that Armas violated the terms of his probation; (2) imposed a suspended sentence of two years eight months; and (3) reinstated formal probation.  The new expiration date for Armas's probation was January 20, 2024.

Two weeks later, on September 28, 2022, the probation officer filed a *second* petition, which alleged that Armas had committed *additional*

---

[2]     On our own motion, we take judicial notice of *Armas I*.

probation violations. While that petition was pending, Armas, who was representing himself, filed a late notice of appeal from the trial court's September 9, 2022 order ruling on the probation officer's *first* petition. Armas's December 5, 2022 notice of appeal was rejected as untimely. But Armas filed a petition for writ of habeas corpus with Division Two of this court to establish its constructive timely filing.

On February 16, 2023, while Armas's habeas petition was pending, the trial court ruled on the probation officer's *second* petition. The trial court found a probation violation, but because the violation was minor, it reinstated Armas's formal probation instead of imposing the suspended sentence. (*Armas I,* at pp. 4–5; 2024 WL 957990, at *2.) In so doing, the trial court extended the expiration date of Armas's probation to June 9, 2024. Armas filed a notice of appeal from the trial court's February 16, 2023 order on the probation officer's *second* petition, and we affirmed that order in *Armas I.*

While the appeal from the ruling on the probation officer's *second* petition was underway, Division Two granted Armas's habeas petition on May 11, 2023, and ordered that Armas's appeal from the ruling on the probation officer's *first* petition would be construed to have been timely filed. That appeal is now before us after being transferred from Division Two.

Armas filed an opening appellate brief but no appellate reply brief. Armas argues in his opening appellate brief that we should reverse the trial court's order on the probation officer's *first* petition because the evidence did not support the trial court's finding of a probation violation and because one of the terms of probation was unconstitutionally overbroad and unenforceable.

In June 2024, while this appeal was pending, Armas completed serving his term of probation. We asked the parties to provide supplemental briefing on whether, as a result, this appeal is moot.

## II.

## DISCUSSION

The parties disagree on whether this appeal has become moot due to the fact that Armas has now completed his term of probation.

"[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 454.) " '[A]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1198.)

A. *Armas's Reliance on Buell and Nolan*

Armas contends that his appeal is not moot because a decision in his favor, reversing the finding that he violated the terms of his probation, would "prevent future use of the probation violation findings to his detriment should he be arrested again." Armas relies primarily on *People v. Buell* (2017) 16 Cal.App.5th 682 (*Buell*) and *People v. Nolan* (2002) 95 Cal.App.4th 1210, 1213 (*Nolan*).)

In *Nolan*, the defendant appealed a finding that she violated her probation, which had resulted in a 120-day jail sentence. (*Nolan*, *supra*, 95 Cal.App.4th p. 1212.) *Nolan* concluded that despite the defendant's completion of her jail term, the appeal from the finding that she violated

4

probation was not moot because it afforded her the "opportunity to erase the 'stigma of criminality' " associated with that finding. (*Id*. at p. 1213.)

In *Buell*, the trial court found that the defendant violated the terms of his mandatory supervision and, as a result, ordered him to serve the remainder of his sentence in custody. (*Buell*, *supra*, 16 Cal.App.5th at p. 687.) The defendant appealed from that order. Relying on *Nolan*, *Buell* held that even though the defendant had already finished serving his sentence, the appeal was not moot because "a successful appeal would clear his record and remove the ' "stigma of criminality." ' " (*Id*. at pp. 687–688.)

Armas contends that we should rely on the reasoning in *Buell* and *Nolan* to conclude that the finding he violated the terms of probation carries with it a stigma of criminality that could have adverse consequences, including the denial of probation in a future criminal proceeding.

B.    *The People's Reliance on Spencer and DeLeon*

The People argue that we should not rely on *Nolan* and *Buell* because those cases are inconsistent with our Supreme Court's holding in *People v. DeLeon* (2017) 3 Cal.5th 640, 645–646 (*DeLeon*), which in turn relied on the United States Supreme Court's holding in *Spencer v. Kemna* (1998) 523 U.S. 1, 12–14 (*Spencer*). Those opinions both considered the mootness of an appeal from an order finding a parole violation.

In *Spencer*, the petitioner sought a writ of habeas corpus, seeking to invalidate an order revoking his parole. (*Spencer*, *supra*, 523 U.S. at pp. 3, 5–6.) However, in the interim, the petitioner completed his term of imprisonment. (*Id*. at p. 6.) *Spencer* concluded that the controversy was moot, explaining that unlike the presumption that a criminal conviction will result in ongoing adverse collateral consequences, it cannot be presumed that a party will experience any adverse collateral consequence from the finding of

5

a parole violation. (*Id*. at p. 14.) Among other things, a presumption of adverse collateral consequences would not arise from the fact that "the parole violations . . . would enable the parole board to deny . . . parole in the future" because such violations were " 'simply one factor, among many, that may be considered by the parole authority.' " Further, " '[t]he parole violations . . . cannot affect a subsequent parole determination unless [the party] again violate[s] state law, [is] returned to prison, and become[s] eligible for parole,' " which the party is " 'required by law' " to prevent from occurring. (*Id*. at p. 13.)

The California Supreme Court considered a comparable situation in *DeLeon, supra,* 3 Cal.5th 640. There, the defendant violated the terms of his parole, and the trial court imposed a 180-day jail sentence. (*Id*. at p. 644.) The defendant appealed, contending that the trial court erred by not conducting a timely preliminary hearing regarding the allegation that he violated his parole. (*Id*. at pp. 648, 653.) In the interim, the defendant finished serving his jail term, and his parole supervision ended. (*Id*. at p. 645.)

Our Supreme Court concluded that the appeal was moot. (*DeLeon, supra*, 3 Cal.5th at pp. 645–646.) It explained that the appeal was "*technically* moot because a reviewing court's resolution of the issues could offer no relief regarding the time [the defendant] spent in custody or the parole term that has already terminated." (*Id*. at p. 645, italics added.) Further, our Supreme Court rejected the defendant's argument that "his appeal is not moot because he faces disadvantageous collateral consequences from the fact that he was found in violation of parole," including the fact that "unsatisfactory performance on parole is a criterion affecting eligibility for probation and mandatory supervision (Cal. Rules of Court, rules 4.414(b)(2),

6

4.415(c)(5)), and is an aggravating circumstance in selecting a term of imprisonment (*id.*, rule 4.421(b)(5))." (*Ibid.*)

In reaching its holding, our Supreme Court relied on the rejection of "a similar claim in *Spencer*," explaining that "*Spencer*'s analysis is persuasive," and expressly adopting it. (*DeLeon, supra*, 3 Cal.5th at pp. 645–646, citing *Spencer, supra*, 523 U.S. 1.) Relying on *Spencer*'s analysis, our Supreme Court explained, "The trial court's finding that [the defendant] violated his parole does not involve the same collateral consequences that attach to a criminal conviction. Future consequences will not arise unless there is additional criminal conduct. Even then, his parole violation is just one of many factors a court may consider in deciding whether to grant probation, or what sentence to impose. Under these circumstances, [the defendant's] parole violation does not constitute a disadvantageous collateral consequence for purposes of assessing mootness." (*Id.* at p. 646.)[3]

C.  *Armas's Appeal Is Moot Because the Reasoning of DeLeon and Spencer Is Applicable Here*

Although *DeLeon* and *Spencer* both involved a challenge to a finding of a parole violation rather than a probation violation, their discussion of mootness is highly relevant here. Armas contends that adverse collateral consequences exist in this case because "[a] future judge could weigh the probation violation findings . . . to conclude that [Armas's] prior performance on probation was poor, and deny probation on that basis." In the context of a

---

[3]  In *DeLeon*, despite concluding that the appeal was moot, the court proceeded to consider the issue presented because it was " 'likely to recur, might otherwise evade appellate review, and is of continuing public interest.' " (*DeLeon, supra*, 3 Cal.5th at p. 646.) That exception does not apply here, as the issues raised in Armas's appeal are not of continuing public interest.

parole violation, *DeLeon* rejected exactly such an argument. (*DeLeon*, *supra*, 3 Cal.5th at p. 645 [the defendant argued that "unsatisfactory performance on parole is a criterion affecting eligibility for probation"].) We perceive no reason to reject that approach here, in the context of a probation violation. Just as in the context of a parole violation, any collateral consequences from the finding that Armas violated the conditions of his probation are too remote to prevent a finding of mootness because those consequences "will not arise unless there is additional criminal conduct," and "even then," the probation violation "is just one of many factors a court may consider in deciding whether to grant probation, or what sentence to impose." (*Id*. at p. 646; see also Cal. Rules of Court, rules 4.414 [criteria affecting the decision to grant or deny probation include "[p]rior performance . . . on probation . . . or parole"]; 4.421(b)(5) [circumstances in aggravation for sentencing include "[t]he defendant's prior performance on probation . . . or parole was unsatisfactory"].)

Further, Armas contends that his appeal is not moot because it is "analogous to the appeal of a criminal conviction after a guilty verdict following a plea of not guilty," in which "[t]he fact that the defendant may have completed his sentence while the appeal is pending does not render moot the appeal of the convictions." However, both *DeLeon* and *Spencer* rejected the equivalent argument in the context of a parole violation, explaining that a parole violation did not carry the same sort of certain and presumed collateral consequences as a criminal conviction. (*DeLeon*, *supra*, 3 Cal.5th at p. 645 ["a violation of parole does not result in civil disabilities resembling those that stem from a criminal conviction"]; *Spencer*, *supra*, 523 U.S. at p. 12 ["it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences,' " but "[t]he same

8

cannot be said of parole revocation"].)  That observation is pertinent here as well, in the context of a probation violation.  In both contexts, adverse collateral consequences are far from certain.  Accordingly, as was the case with the parole violation in *DeLeon*, a probation violation "does not constitute a disadvantageous collateral consequence for purposes of assessing mootness." (*DeLeon*, at p. 646.)

To the extent that *Buell, supra*, 16 Cal.App.5th 682 and *Nolan, supra*, 95 Cal.App.4th 1210 are inconsistent with the conclusion we reach here, we respectfully disagree with their analysis on the issue of mootness.  *Buell*'s analysis is not persuasive because it does not acknowledge or discuss our Supreme Court's opinion in *DeLeon, supra,* 3 Cal.5th 640, even though *Buell* was issued three months after *DeLeon*.  *Nolan* was decided in 2002, many years prior to our Supreme Court's 2017 opinion in *DeLeon* and therefore could not have taken *DeLeon* into account.

Based on *DeLeon*'s discussion, and its adoption of the analysis in *Spencer*, *supra*, 523 U.S. 1, we are not persuaded that the "stigma of criminality" that *Nolan* describes as being associated with a probation violation (*Nolan*, *supra*, 95 Cal.App.4th at p. 1213) and *Buell* describes as being associated with a violation of mandatory supervision (*Buell*, *supra*, 16 Cal.App.5th at p. 688) is the type of adverse collateral consequence that will prevent an appeal from becoming moot.  Whether in the context of a parole violation (as in *DeLeon*), a violation of mandatory supervision (as in *Buell*), or a probation violation (as in this case and in *Nolan*), those consequences are too contingent and uncertain.  Further, to the extent that *Buell* and *Nolan* focused on the "stigma of criminality" (*Nolan*, at p. 1213; (*Buell*, at p. 688) as a *moral* stigma apart from any specific collateral consequences to a defendant's *legal* rights, *Spencer* establishes that " 'the

9

*moral* stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review.' " (*Spencer,* at pp. 8–9, italics added.)

Because Armas has completed probation, his appeal challenging the finding that he violated the terms of his probation is moot, and we will therefore dismiss it.

### DISPOSITION

The appeal is dismissed as moot.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

RUBIN, J.