Filed 11/18/25  P. v. Gutierrez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ANGEL GUTIERREZ,<br><br>    Defendant and Appellant. | F089019<br><br>(Super. Ct. No. BF167465A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Jose Angel Gutierrez, in pro. per.; and Douglas C. Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Darren K. Indermill, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Snauffer, J. and Fain, J.[†]

[†]    Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

Appellant Jose Angel Gutierrez appeals from the sentence imposed after he pleaded no contest to the charges of transportation or sale of methamphetamine and possession of methamphetamine for sale. Appellant's counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), requesting this court independently review the record. Appellant then submitted a separate supplemental letter brief raising a single issue he wishes to have reviewed. For the reasons set forth below, we dismiss the appeal as moot.

## PROCEDURAL BACKGROUND

In June 2018, appellant was charged with transportation or sale of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 1), possession of methamphetamine for sale (Health & Saf. Code, § 11378; counts 2, 5), driving on a suspended license (Veh. Code, § 14601.2, subd. (a); count 3), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 4), and maintaining a place to sell methamphetamine (Health & Saf. Code, § 11366; count 6). It was also alleged that appellant served prior prison terms (Pen. Code, § 667.5, subd. (b)) as to counts 1, 2, 5, and 6 and committed a felony offense while released from custody pending trial (Pen. Code, § 12022.1) as to counts 5 and 6.

Appellant eventually pleaded no contest to counts 1 and 5 as part of a plea agreement in which he agreed to a five-year sentence comprised of two years in custody and the remainder to be served on mandatory supervision in exchange for the dismissal of the remainder of the charges and all allegations.[1] The trial court later sentenced appellant to an aggregate split term of four years eight months and ordered him to serve the first

---

[1] Also referred to as a "split sentence," this "is a hybrid sentence in which a trial court suspends execution of a portion of the term and releases the defendant into the community under the mandatory supervision of the county probation department." (*People v. Avignone* (2017) 16 Cal.App.5th 1233, 1240.)

2.

two years of his sentence in custody and the remainder of the term on mandatory supervision, along with fines and fees.

Appellant's counsel filed a motion to terminate mandatory supervision on August 29, 2024, arguing that appellant was sentenced to two years eight months mandatory supervision on March 18, 2021, which commenced when he was released from custody on September 8, 2021, and should have terminated in May 2024, and this term was not altered by the fact that appellant did not serve the entire two years in custody. On September 17, 2024, the probation department requested that the trial court revoke appellant's mandatory supervision, alleging he failed to comply with drug testing in July and August 2024, admitted using methamphetamine in September 2024, and falsified a doctor's note to subvert court-ordered substance abuse counseling.

On October 4, 2024, the trial court rejected appellant's argument that the term of mandatory supervision was fixed at sentencing and could not be altered by appellant's early release from his custodial sentence: "I'm going to deny the motion. Obviously[,] I could easily be wrong, but I think the proper interpretation is we're doing a split for that total time. And if we shorten the custody time, then you're lengthening the supervision time." Appellant admitted the violations, and the trial court sentenced him to time served and reinstated mandatory supervision until May 5, 2025.

Appellant filed this timely appeal on December 3, 2024.

Appellant's counsel filed a brief pursuant to *Wende, supra*, 25 Cal.3d 436, requesting this court independently review the record. Appellant then submitted a separate supplemental letter brief, raising a single issue he wishes to have reviewed: whether the trial court erred in finding that his mandatory supervision term was extended by the unserved portion of his two-year custodial term. We ordered supplemental briefing to address the issue raised by appellant's letter brief and the additional issue of whether his appeal is moot because he is no longer serving any sentence, as his term of

3.

mandatory supervision expired on May 5, 2025, and whether we should exercise discretion to address the issue even if moot.

Appellant's counsel filed a supplemental brief, arguing that the trial court erred in extending appellant's term of mandatory supervision and, while conceding that his appeal was technically moot, additionally argued that the court should exercise its discretion to reach the merits of the appeal because the issue is likely to recur and would otherwise evade appellate review. The People argue that the appeal is moot because appellant's sentence expired when his term of mandatory supervision terminated on May 5, 2025. We agree with the People, decline to exercise discretion to consider appellant's arguments, and will dismiss the appeal.

## DISCUSSION

"[I]n affirming the judgment rendered in a *Wende* appeal, the Court of Appeal must prepare a written opinion that describes the contentions personally raised by the defendant and the reasons those contentions fail. In addition, the Court of Appeal must provide a brief description of the underlying facts, the procedural history, the crimes of which the defendant was convicted, and the punishment imposed," along with any further information the court deems appropriate for an adequate written opinion. (*People v. Kelly* (2006) 40 Cal.4th 106, 124.) In reviewing the issues raised in appellant's letter brief, this court undertook a thorough review of the record and is satisfied no arguable errors exist that would result in a disposition more favorable to appellant. (See *Wende, supra*, 25 Cal.3d at pp. 441–443.)

We requested supplemental briefing regarding whether termination of appellant's mandatory supervision on May 5, 2025, mooted his sentencing claim. After considering that briefing, we conclude the appeal is moot.

" '[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.' " (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.) Consequently, " " '[w]hen, pending an appeal from the

4.

judgment of a lower court, and without any fault of the [opposing party], an event occurs which renders it impossible for [the] court, if it should decide the case in favor of [defendant], to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal" ' as moot." (*People v. DeLeon* (2017) 3 Cal.5th 640, 645, first & third bracketed insertions added (*DeLeon*).)  Where a defendant has completed a sentence, their claims of error as to that sentence are moot "because a reviewing court's resolution of the issues could offer no relief regarding the time he spent [on mandatory supervision or] in custody." (*Ibid.*)

Even though appellant is now free from custody and supervision, he asserts his claim of sentencing error is not moot because his performance on mandatory supervision "may result in disadvantageous collateral consequences, including negatively impacting his eligibility for a future grant of probation."  But he has not provided relevant authority to support this claim, or demonstrated how his completed sentence will result in ongoing adverse collateral consequences such as would prevent his appeal from being moot.

Appellant argues that we should address his appellate claim to provide him " 'the opportunity to erase the "stigma of criminality." ' "  However, a defendant must demonstrate "sufficiently concrete consequences to avoid a finding of mootness." (*DeLeon, supra*, 3 Cal.5th at p. 646, fn. 2.)  Speculative consequences do not "support the conclusion that a legally sufficient controversy exists." (*Ibid.*) "[C]omplaining of 'stigma' alone is insufficient to sustain an appeal.  The stigma must be paired with some effect on the … legal status that is capable of being redressed by a favorable court decision." (*In re D.P.* (2023) 14 Cal.5th 266, 277.)  " ' "[T]he moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review." ' " (*People v. Armas* (2024) 107 Cal.App.5th 350, 357, italics omitted.)

Appellant contends that we should rely on *People v. Buell* (2017) 16 Cal.App.5th 682, 687–688 (*Buell*) and *People v. Nolan* (2002) 95 Cal.App.4th 1210, 1213 (*Nolan*) to

conclude that the finding he violated the terms of mandatory supervision carries with it a stigma of criminality that could have adverse consequences, including the denial of probation or mandatory supervision in a future criminal proceeding. However, *Nolan* and *Buell* are inconsistent with our Supreme Court's holding in *DeLeon, supra*, 3 Cal.5th 640 at pages 645–646, which considered the mootness of an appeal from an order finding a parole violation.

There, DeLeon violated the terms of his parole, and the trial court imposed a 180-day jail sentence. (*DeLeon, supra*, 3 Cal.5th at p. 644.) DeLeon appealed, contending that the trial court erred by not conducting a timely probable cause hearing regarding the allegation that he violated his parole. (*Id.* at p. 648.) In the interim, DeLeon finished serving his jail term, and his parole supervision ended. (*Id.* at p. 645.) Our Supreme Court concluded that the appeal was "technically moot because a reviewing court's resolution of the issues could offer no relief regarding the time [DeLeon] spent in custody or the parole term that has already terminated" (*id.* at p. 645). Further, our Supreme Court rejected DeLeon's argument that "his appeal is not moot because he faces disadvantageous collateral consequences from the fact that he was found in violation of parole," including the fact that "unsatisfactory performance on parole is a criterion affecting eligibility for probation and mandatory supervision (Cal. Rules of Court, rules 4.414(b)(2), 4.415(c)(5)), and is an aggravating circumstance in selecting a term of imprisonment (*id.*, rule 4.421(b)(5))." (*Ibid.*)

Our Supreme Court rejected this reasoning as follows: "The trial court's finding that DeLeon violated his parole does not involve the same collateral consequences that attach to a criminal conviction. Future consequences will not arise unless there is additional criminal conduct. Even then, his parole violation is just one of many factors a court may consider in deciding whether to grant probation, or what sentence to impose. Under these circumstances, DeLeon's parole violation does not constitute a disadvantageous collateral consequence for purposes of assessing mootness." (*DeLeon,*

6.

*supra*, 3 Cal.5th at p. 646.) The court acknowledged that "under other circumstances, a defendant could demonstrate sufficiently concrete consequences to avoid a finding of mootness, even if the term of imprisonment has already concluded," but found "that the consequences DeLeon has identified here are simply too speculative to support the conclusion that a legally sufficient controversy exists." (*Id.* at p. 646, fn. 2.)

Although *DeLeon* involved a challenge to a finding of a parole violation rather than a mandatory supervision violation, the discussion of mootness is highly relevant here. Appellant contends that adverse collateral consequences exist in this case because it could negatively impact eligibility for a future grant of probation. In the context of a parole violation, DeLeon rejected exactly such an argument. (*DeLeon, supra*, 3 Cal.5th at p. 645.) We perceive no reason to reject that approach here, in the context of a mandatory supervision violation. Just as in the context of a parole violation, any collateral consequences from the finding that appellant violated the conditions of his mandatory supervision are too remote to prevent a finding of mootness because those consequences "will not arise unless there is additional criminal conduct," and "[e]ven then," the mandatory supervision violation "is just one of many factors a court may consider in deciding whether to grant probation, or what sentence to impose." (*Id.* at p. 646; see also Cal. Rules of Court, rules 4.414(b)(2) [criteria affecting the decision to grant or deny probation include "[p]rior performance … on mandatory supervision"], 4.421(b)(5) [circumstances in aggravation for sentencing include "[t]he defendant's prior performance on … mandatory supervision … was unsatisfactory"].) Accordingly, as was the case with the parole violation in *DeLeon*, a mandatory supervision violation "does not constitute a disadvantageous collateral consequence for purposes of assessing mootness."[2] (*DeLeon*, at p. 646.)

---

[2] To the extent that *Buell, supra*, 16 Cal.App.5th 682 and *Nolan, supra*, 95 Cal.App.4th 1210 are inconsistent with the conclusion we reach here, we respectfully decline to follow them. *Buell*'s analysis is not persuasive as it fails to acknowledge or discuss our Supreme Court's

Appellant's claim is, therefore, moot. Nevertheless, appellant also urges us to use our discretion to hear the case anyway, because the issue raised "is likely to recur, might otherwise evade appellate review, and is of continuing public interest." (*People v. Morales* (2016) 63 Cal.4th 399, 409.) Our Supreme Court did exactly that in *DeLeon*, opting to consider the issue raised there despite the technical mootness. (*DeLeon, supra*, 3 Cal.5th at p. 646.) However, we decline to do so. Our Supreme Court exercised its discretion in *DeLeon* because the central question raised there was "what procedure should govern parole revocation proceedings under the Realignment Act?" (*Ibid.*) That issue met the relevant criteria for the court to address because it was an important question of procedural due process and statutory interpretation that would affect proceedings throughout the state and would necessarily recur in cases other than DeLeon's.

However, appellant has failed to demonstrate the global significance of the issue presented here. The only argument raised by appellant is that the public has a substantial interest in understanding how mandatory supervision sentences will be served and generally states that the issue is likely to evade appellate review given the "relatively fleeting nature of mandatory supervision." However, published California cases have shown varying terms of supervision, many of which cannot be characterized as fleeting. (See, e.g., *People v. Nixon* (2025) 111 Cal.App.5th 947, 950 [five years of mandatory supervision]; *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 988 [three years of mandatory supervision]; *People v. Martinez* (2020) 54 Cal.App.5th 885, 890 [two years eight months of mandatory supervision]; *People v. Conatser* (2020) 53 Cal.App.5th 1223,

opinion in *DeLeon, supra*, 3 Cal.5th 640, even though *Buell* was issued three months after *DeLeon*. *Nolan* was decided in 2002, many years prior to our Supreme Court's 2017 opinion in *DeLeon*, and therefore could not have taken *DeLeon* into account. Based on *DeLeon*'s discussion, the "stigma of criminality" that *Nolan* describes as being associated with a probation violation (*Nolan*, at p. 1213) and *Buell* describes as being associated with a violation of mandatory supervision (*Buell*, at p. 688) is not the type of adverse collateral consequence that will prevent an appeal from becoming moot. (*DeLeon*, at pp. 945–946.)

1225 [six years of mandatory supervision]; *People v. Mendoza* (2020) 44 Cal.App.5th 1044, 1050 [four years of mandatory supervision]; *People v. Samuels* (2018) 21 Cal.App.5th 962, 965 [five years of mandatory supervision]; *People v. Millan* (2018) 20 Cal.App.5th 450, 452 [five years of mandatory supervision]; *People v. Bollaert* (2016) 248 Cal.App.4th 699, 704 [10 years of mandatory supervision].)

Appellant has completed his term of mandatory supervision. Because we conclude that the issue raised by appellant is capable of being reviewed in other cases and any ruling in this case would fail to provide appellant with any relief, his appeal challenging the term of mandatory supervision is moot. We will therefore dismiss it.

## DISPOSITION

Appellant's appeal in this case is hereby dismissed.